## BYRD *v.* THE STATE.

1. It was competent for a witness who testified that he had experience in firing shells of a given description and had observed the impression made upon objects when struck by a shot fired from shells of that character, and who had also examined and probed the wound of the person alleged to have been murdered, to state as his opinion that the wound upon the deceased was made by the discharge of a shell of the character referred to.
2. The contention of the plaintiff in error in this case being that he fired the fatal shot to prevent the deceased from shooting and killing him, the court did not err in charging the jury as follows:  "Justifiable homicide, as applicable to the defense set up in this case, means killing in self-defense, or in defense of person against one who manifestly intends by violence or surprise to commit a felony on the person killing."

NOVEMBER 11, 1914.

Indictment for murder.  Before Judge Worrill.  Quitman superior court.  July 13, 1914.

*M. C. Edwards* and *E. B. King,* for plaintiff in error.

*Warren Grice,* attorney-general, *B. T. Castellow,* solicitor-general, *R. R. Arnold,* and *Pottle & Hofmayer,* contra.

BECK, J.  Cliff Byrd and Melvin Byrd were jointly indicted for the murder of Jim Mandeville.  Byrd alone was put on trial.  The jury returned a verdict of guilty.  A motion for a new trial was overruled, and Byrd excepted.

1.  The court did not err in permitting a witness who had examined the gunshot wound upon the body of the decedent to give in evidence, over the objection that the witness had not been shown to be an expert, his opinion that the wound was made "with a cut or rung shell;" as the witness was immediately thereafter, and in connection with his answer, examined upon the subject of his knowledge of the character of wounds made with shells of the description referred to.  He testified that he was familiar with the "impression that rung shells make when discharged near an object

and against an object;" and further, that while he had not had actual experience in shooting human bodies with rung shells, he had shot rung shells at and against other objects and had observed the effect of such shots, and that the effect of converting an ordinary shell into a "cut or rung shell" would be to make the shot go more in a body. The witness also explained, that a "rung shell" is a shell that is cut around between the powder and the shot, leaving just enough of the shell after cutting it around to hold the shot, so that when it is discharged the end of the shell with the shot in it is torn loose from the other part of the shell, with the result that the whole lot of shot goes on in the end of the rung shell; and that when a shell is fired in the way described, the shot is held in a bulk when it strikes an object, whereas when an ordinary shell is fired the shot will begin to scatter soon after leaving the muzzle of the gun. He further described the wound which resulted in the death of the deceased, in a manner tending to show that it had been inflicted with a gun discharging a "cut or rung shell." It was competent for the witness, after showing that he had experience in firing at objects with shells of the description in question, and showing that he had knowledge of the appearance of an object shot with such a shell, to give in evidence his opinion that the wound which he examined upon the deceased was made with shot discharged from a shell of the kind described by the witness and the effect of which he had had opportunity to observe. It would have been proper and more regular to have examined the witness touching his qualification as an expert, upon the subject of wounds made by shot from shells of the kind then in question, before asking his opinion as to the kind of shell which had been used in inflicting the wound upon the deceased; but inasmuch as the facts upon which the witness based his opinion were immediately afterwards stated, the irregularity in allowing him to state his opinion first is not cause for a new trial.

2. Complaint is made of the following charge of the court: "Justifiable homicide, as applicable to the defense set up in this case, means killing in self-defense, or in defense of person against one who manifestly intends by violence or surprise to commit a felony on the person killing." It is insisted that "this limitation of the meaning of justifiable homicide as applicable to this particular case is too narrow; that the court should have charged fur-

ther, under the evidence in this case, sections 74 and 75 of the Criminal Code." The criticism is without merit. The plaintiff in error and his brother, Melvin Byrd, were jointly indicted for the murder of Jim Mandeville. The evidence shows that they went to the house of the deceased, being armed, the plaintiff in error with a shotgun and his brother Melvin with a pistol. The testimony of the only eye-witness shows that the deceased was not the aggressor in the fatal encounter; and in the statement of the defendant himself when on trial it was claimed, not that he shot to protect his brother; but that he fired to prevent the deceased from shooting him. It was, according to the defendant's statement, for the sole purpose of saving his own life that he fired the shot which resulted in the death of Jim Mandeville; and it was evidently with reference to this issue, clearly made between the claim of the accused that he was acting in self-defense and the testimony of a third party who saw the shooting and who swore to a state of facts showing the deceased acted on the defensive against an assault ,with a deadly weapon, that the charge complained of was given.

There was no merit in the other criticisms upon the charge of the court, and the evidence authorized the verdict.

*Judgment affirmed. All the Justices concur.*