# CHARLESTON.

### R. D. JOHNSON MILLING CO. v. READ *et als.*

### Submitted February 23, 1915.   Decided June 22, 1915.

1. EQUITY—*Parties—Designation in Pleading.*
   Naming a person in the caption of the bill as a defendant and serving him with process, are not alone sufficient to constitute such person a party to the suit so as to authorize the granting of relief against him. An averment showing his interest in, and relation to, the subject matter of suit and a prayer for relief against him are indispensable.   (p. 559).

2. SAME—*Pleading—Prayer—General Relief.*
   A prayer for general relief does not warrant the granting of relief against a person, in respect of whom no allegation is made and no special relief asked.   (p. 559).

3. SAME—*Relief—General Prayer.*
   A judgment creditors' bill to enforce liens against a debtor's land, to which other lienors and the debtor's wife are named as defendants, and in which the only allegation respecting the wife's interest in the suit is, that some of the judgments are against her and her husband jointly, and which contains a prayer for special relief against the husband only and also a prayer for general relief will not authorize the granting of relief against the wife.   (p. 559).

4. CREDITOR'S SUIT—*Intervention—Sufficiency.*
   Her filing a so-called answer to such a bill, claiming title to some of the lands averred in the bill to be her husband's land, does not supply the lack of proper averment in the bill, or make the wife a party against whom relief can be granted.   (p. 560).

5. EQUITY—*Amendment—New Party.*
   Such bill is amendable, for the purpose of making the debtor's wife a party and attacking conveyances made by him to her, either voluntary or fraudulent for the purpose of hindering, delaying and defrauding his creditors; provided always, such amendment be made with reasonable diligence.   (p. 563).

6. SAME—*Amendment—Laches.*
   Delay in making such amendment for eight years, without excuse therefor, constitutes laches, and justifies the court in rejecting it on demurrer. A court of equity responds only to conscience, good faith and reasonable diligence.   (p. 564).

7. SAME—*Pleading—New Subject Matter—Laches.*
   The same degree of diligence is required in amending a bill so as

76 W. Va.

to introduce new subject matter, as is required in bringing an original suit.   (p. 564).

8.   SAME—*Amendment—Statute.*

Sec. 12, Ch. 125, Code 1913, does not give a plaintiff .an absolute right and unlimited time, after appearance by defendant, to amend his bill.   The right to amend depends on whether substantial justice will be promoted thereby, a question which must be determined by the court.   The statute does not preclude the defense of laches as a bar to the right.   (p. 564).

9.   FRAUDULENT CONVEYANCES—*Sufficiency of Evidence—Conveyance to Wife.*

The burden is on the wife who claims lands by conveyance from her insolvent husband, against his creditors, to establish by clear and convincing proof that the land was purchased for her with her own means; and if the testimony shows that the only means she had was money received from her mother's estate twenty-five or .thirty years before her husband's conveyance to her, and 'that she turned the money over to him, taking no note or writing evidencing the transaction as a loan and neither of them keeping an account thereof, the presumption is that she intended it as a gift to him . (p. 564).

10.   DEEDS—*Reformation of Instrument—Validity—Mistake of Grantor.*

In the absence of fraud on the part of the grantee, or mutuality of mistake by both parties to a deed, it will not be set aside or altered on the ground that the grantor was ignorant of its contents. (p. 566).

11.   JUSTICES OF THE PEACE—*Default—Judgment—Validity.*

The return of a constable on a summons issued by a justice, in a case in which he has jurisdiction of the subject matter, stating that he executed it by delivering a copy thereof to the defendant on a certain day, is conclusive evidence of a proper service.   (p. 568).

12.   SAME.

The omission by a justice, in rendering a default judgment, to note in his. docket that he waited one hour after the time set for trial for defendant to appear, does not render the judgment void. (p. 569).

13.   JUDGMENT—*Conclusiveness—Foreign Judgment.*

The judgment or decree of a court of a sister state, having jurisdiction of the parties and the subject matter of suit, is res judicata as to all matters determined thereby.   The parties are estopped by such final judgment or decree from again litigating the same matters in a court of this state.   (p. 569).

(LYNCH, JUDGE, absent.)

Appeal from Circuit Court, Randolph County.

Creditors' suit by R. D. Johnson Milling Company against William J. Read and others. Decree for the defendants, and complainant appeals.

*Affirmed in part. Reversed in part. Remanded.*

*James A. Bent* and *J. F. Strader,* for appellant.

*J. F. Harding* and *Arnold & Arnold, Wm. McDonald, Tasker G. Lowndes* and *Cunningham & Stallings,* for appellees.

WILLIAMS, JUDGE:

Plaintiff filed its bill at April rules, 1899, to enforce the lien of a judgment recovered against the defendant W. J. Read, and in the caption thereof named Nora S. Read, his wife, and a number of other lien creditors besides itself as defendants. The bill avers that some of the judgments, naming them, were recovered against W. J. Read and his wife jointly. No other averment shows why Nora S. Read was made a party to the suit, or that she owned any land against which the judgments were liens; and no relief was prayed for against her. It is necessary to determine whether the bill presented a suit against her, inasmuch as many of the assignments of error depend upon a decision of that question. Plaintiff itself was certainly not seeking relief against her land, because its judgment was against her husband only, and it prayed for no relief against her. Merely naming her in the caption of the bill as a party defendant and serving her with process was not enough to constitute the suit one against her. It was indispensable to aver facts showing her relation to the cause of action, her connection with the subject matter thereof, and to pray for relief against her or her land. The only prayer of the bill is, that all the real estate owned by W. J. Read; the condition of his title thereto; the liens thereon and their priorities, be ascertained; and that the cause be referred to a commissioner for that purpose; and that, upon the coming in and confirmation of the report, a decree be entered directing a sale of said land to satisfy the liens thereon. There is no averment whatever entitling plain-

tiff to a decree against Mrs. Read, and no prayer for a sale
of her land. The bill contains nothing she is called upon to
answer and nothing in fact she could answer; and the court
could not adjudicate her rights without giving her an op-
portunity to defend. *McCoy* v. *Allen,* 16 W. Va. 724; *Chap-
man* v. *P. & S. R. R. Co.,* 18 W. Va. 184; and *Bank* v. *Wilson,*
35 W. Va. 36. Sec. 37, Ch. 125, Code, prescribing the form
of a bill in chancery, does not dispense with the necessity for
proper averments and prayer for relief in respect of a party
proceeded against. *Preston* v. *West,* 55 W. Va. 391. A
prayer for general relief will not warrant the court to grant
relief against a party, as to whom no averment is made and
no special relief asked. General relief can be given against
those only as to whom special relief is sought. A bill to
enforce liens against a husband's land would not authorize
the court to grant relief against the wife's land, simply
because it contained a prayer for general relief. It follows,
from these observations respecting the rules of equity plead-
ing, that plaintiff's bill did not present a cause of action, or
suit, against Nora S. Read; and, as to her, it was not a
pending suit.

The bill averred that W. J. Read owned three tracts of
land, an 80 acre tract known as the Mouse land, an 121-1/2
acre tract known as the Phares land and a 30 acre tract
known as the Butcher tract. These tracts had been conveyed
to W. J. Read at different times, and he conveyed the 80 acres
to his wife before this suit was brought and before any of the
liens had attached; and the 30 acres and about 71 acres of
the Phares tract he conveyed to her after the institution of
this suit. She filed her answer in February 1905, setting up
title in herself to the 80 acres, and on March 14th of the
same year, by leave of court, she filed her amended and sup-
plemental answer, claiming title to both the 80 acres and the
30 acres. These so-called answers were more in the nature of
petitions; they responded to no allegation in the bill because
no averment related to her. Nor did she make any one a
party to those petitions, or pray for affirmative relief. Hence,
the filing of them did not supply the lack of averments and
prayer in the bill, so as to warrant the granting of any relief

against her.  An amendment of the bill was essential to any kind of relief against her.

But plaintiff made no effort to amend its bill until March rules, 1913.  The final decree from which this appeal was taken by plaintiff, pronounced on the 12th of June, 1913, sustained the demurrer thereto and rejected the amended bill, and this is one of appellant's assignments of error, and to it we will advert later on.  The cause was then heard upon the fourth report of commissioner W. E. Baker, fifteen exceptions taken thereto by W. J. Read and twelve by Nora S. Read, and upon the petitions of certain creditors whose liens were subsequent to the date of the suit.  The court sustained W. J. Read's fifteenth and overruled all his other exceptions; and overruled Mrs. Read's first, eighth and ninth, and sustained all her other exceptions.  This ruling, in some particulars, is assigned as error by appellant, and, in others, cross-assigned as error by appellees.

Prior to the date of plaintiff's judgment, W. J. Read and wife had conveyed to Helen M. Nestor 31 acres and 131 poles, and to W. L. Hicks 13-1/2 acres, out of the 121-1/2 acre tract known as the Phares land.  Both of these deeds were recorded before plaintiff obtained its judgment.  On the 10th of October, 1899, W. J. Read conveyed the remainder of that tract to his wife; and, by deed dated May 9, 1901, she conveyed to Helen M. Nestor 6 acres and 100 poles more out of it, her husband joining in the deed.  The two last mentioned conveyances were made after the suit was brought.

Prior to any of the aforementioned conveyances, to-wit, on April 7, 1897, Read and wife executed to L. D. Strader, trustee, a trust deed conveying all three tracts of land, the 30 acres, 121-1/2 acres, and the 80 acres, as additional and collateral security, to secure a note of $8,000 payable to W. C. White, which was at that time secured by a mortgage and also by a trust deed on property in the State of Maryland. Although the 80 acres had been conveyed to Nora S. Read by her husband, in 1895, it also was included in the trust deed to Strader, trustee.  But that deed provided that the Maryland property was to be primarily liable for the White debt. White assigned the debt and mortgage to De Warren H. Reynolds on the 2nd of January, 1898.  There was also a

prior mortgage on the same property, held by one George Glick, to secure a debt to him of $6,000.00. This debt and mortgage were likewise assigned to Reynolds; and thereafter, on the 16th day of March, 1901, and pursuant to the power and authority conferred on the mortgagee by the terms of the Glick mortgage, he sold the property and became the purchaser himself, at the cash price of $15,150.00. This sum was not enough to pay the taxes, commissions and the two mortgages in full. The balance ascertained by the commissioner in this case to be due on that debt is $2,782.20, and is reported as the second lien, in favor of said Reynolds as assignee of White, on all three tracts of land, the taxes due thereon being reported as the first lien. Thirty-six liens, in all, were reported, aggregating more than ten thousand dollars. The commissioner reported plaintiff's judgment as the fifth lien on the Phares and Butcher tracts. But the court modified the report, and held that it was not a lien on the Butcher tract, and was a lien only on the remainder of the Phares tract, after deducting therefrom 31 acres and 131 poles conveyed to Helen M. Nestor and 13-1/2 acres conveyed to W. L. Hicks. The balance of the debt due De Warren H. Reynolds, trustee and assignee of White, was decreed to be the third lien upon the same portion of the Phares tract as plaintiff's judgment, said Reynolds having released his lien as to the two parcels conveyed to Helen M. Nestor and Hicks, respectively, and also a third lien upon the 80 and the 30 acres, as the land of Nora S. Read, the court decreeing those two tracts to be her sole and separate property, and not liable to sale in this proceeding. Although the court decreed that the Helen M. Nestor parcel of 6 acres and 100 poles was liable to appellant's judgment lien, it was not sold. Only 71 acres of the Phares tract was sold. It was purchased by Semmes Read, son of W. J. and Nora S. Read, at the price of $3,300, and the sale was confirmed. The sum realized was not enough to pay the costs of suit, the two prior liens and the balance due DeWarren H. Reynolds, by $608.48. Semmes Read then filed his petition in open court, averring that he had become the owner of all the land covered by the trust deed, and prayed that he might be permitted to pay the balance due said Reynolds, into the hands of the special com-

missioner, and to be thereupon subrogated, without recourse, to his rights under the deed of trust. His prayer was granted, and he paid the money to the commissioner, who was directed by the decree to pay it over to Reynolds upon his delivery of the original note, the deed of trust and assignment to said Semmes Read, or his attorney. All rights of creditors to proceed against Nora S. Read, or her lands, for the satisfaction of any debts due them from her, was expressly reserved in the decree. No part of the proceeds of sale was applicable to plaintiff's lien. It has appealed and assigns numerous errors. Cross-errors are also assigned by counsel for W. J. Read and wife, and by counsel representing other judgment creditors of W. J. and Nora S. Read.

The first assignment by appellant is the rejection of its amended bill, on demurrer thereto. Plaintiff did not file its amended bill for nearly fifteen years after it brought its original suit. By the amendment it is sought to charge the lands of Nora S. Read, and averred that the conveyance to her of the 80 acres from her husband was voluntary and without consideration, and that the conveyance to her of the 30 acres was made by him with intent to hinder, delay and defraud his creditors, and that she knew of such fraudulent intent and participated therein. We do not think the amendment is subject to one of the objections made by the demurrer, that it seeks to introduce matter wholly foreign to the purpose of the original bill. There is no question of a lien creditor's right to attack a fraudulent or voluntary conveyance, made by his debtor, in a suit brought to enforce his lien, provided he does so in time. Such is the well settled practice in this state. *Rogers* v. *Verlander,* 30 W. Va. 619; *Butler* v. *Thompson,* 45 W. Va. 660; *Peale* v. *Grossman,* 70 W. Va. 1; *Davis* v. *Halstead,* 70 W. Va. 572; and *Bland* v. *Rigby,* 73 W. Va. 61. Sec. 2, Ch. 133, Code 1913, permits a creditor who has not even reduced his claim to judgment to attack a voluntary or fraudulent conveyance, and gives him a lien upon the land, if he is successful, from the time of filing his bill or petition. *Watkins* v. *Wortham,* 19 W. Va. 78. A lien creditor could do so regardless of that statute. The new matters of the alleged voluntary and fraudulent conveyances, which plaintiff sought to introduce by its amendment, was germane to

the cause of suit averred in its original bill. But it presented no excuse for its great delay. It does not say how or when it discovered the alleged fraud. It must have known that Nora S. Read claimed both the 80 and the 30 acres, from the time she filed her so-called answers; yet it made no effort to amend its bill, attacking her title thereto, until eight years thereafter. Sec. 12, Ch. 125, Code, permitting a plaintiff to amend his bill after the defendant has appeared, if substantial justice will be promoted thereby, contemplates that the amendment shall be made in a reasonable time. The statute confers a right, but it must be pursued with reasonable diligence. Nor is such right absolute and unqualified. It depends upon whether substantial justice will be promoted by the amendment; and the court, in the exercise of its judicial discretion, must determine that matter. If a plaintiff has been guilty of laches, it may refuse to allow the amendment on the ground that substantial justice would not thereby be promoted. Equity requires diligence in amending as well as in bringing a suit. Nothing calls into activity a court of equity except conscience, good faith and reasonable diligence. Plaintiff offered no explanation for its delay, no excuse. It averred that the conveyance of the 80 acres was voluntary; yet it did not attack it for eighteen years after it was made and recorded. It can not be successfully assailed for that reason only after five years. It avers that the conveyance of the 30 acres was fraudulent; and yet it does not inform the court when it discovered the fraud, or give any excuse for not attacking the deed for eight years after it knew it had been made. Delay, when there is a reasonable excuse therefor, is not laches, but unexplained delay is, and it may be taken advantage of on demurrer. *Bill* v. *Schilling*, 39 W. Va. 108; *Western M. & M. Co.* v. *Virginia Cannel Coal Co.*, 10 W. Va. 250; *Jarvis* v. *Martin's Admr.*, 45 W. Va. 347; *Jackson's Admr.* v. *Hull*, 21 W. Va. 601; *Eubank* v. *Barnes*, 93 Va. 153. It was, therefore, not error to reject the amended bill.

Appellant's next assignment is, that the court erred in sustaining certain exceptions taken to the commissioner's report by Nora S. Read, numbered 1, 2, 3, 4, 5, 6, 7, 10, 11, and 12, and in sustaining the fifteenth exception thereto of

W. J. Read. Most of these exceptions were taken because the commissioner had reported the judgments against W. J. Read as liens upon the 30 acres, the Butcher tract. Consequently, the determination of the question, whether Nora S. Read has proven herself entitled to that tract, will dispose of most of the exceptions. That tract was conveyed to W. J. Read by B. L. Butcher, special commissioner, on the 14th of March, 1896, and W. J. Read did not convey it to his wife until October 16, 1899, several months after the suit was brought. His insolvency is alleged and proven. Hence, his wife carried the burden of establishing, by clear and convincing proof, that the land was purchased for her with her own means. The only evidence on the question is the depositions of herself and husband. They both testified that he purchased the land for her with her money. But, when asked, on cross-examination, where she got the money, she replied that it came from her mother's estate; and yet she says her mother had died about twenty-five years before that time. There is no evidence that her husband kept a separate account of the money he got from her, either from that or any other source, or that he ever, at any time, executed his note to her for money borrowed from her. Neither is there any evidence of an express agreement that he was to buy that particular tract of land for her. She did not know, in 1905, when she testified, what the land had cost. Before coming to West Virginia, W. J. Read and wife lived in Maryland; and, on the 5th of November, 1897, they executed to De Warren H. Reynolds, Robert R. Henderson and James W. Thomas, trustees, a deed of trust conveying all W. J. Read's property in Allegany county and in the City of Baltimore, and elsewhere in the state of Maryland, to secure his creditors, in the order of the legal priority of their several claims. That trust deed authorized the trustees to sell his property and apply the proceeds to the payment of his debts. It further provided that, if any surplus remained, it was to be "paid over to William J. Read his proper representatives or assigns." There is no pretense that Mrs. Read was one of the creditors thereby secured; nor is there any evidence that the money she got from her mother's estate had ever been invested in property for her in the state of Maryland. But it does appear that W. J. Read had been in

financial straits for several years prior to this suit, and was a heavy borrower. In view of these facts and circumstances, the evidence is not sufficient to overcome the presumption that the money Mrs. Read received from her mother's estate and turned over to her husband, taking no note therefor and keeping no account thereof, was intended as a gift to him. *Bank* v. *Alkinson,* 32 W. Va. 203; *Bennett* v. *Bennett,* 37 W. Va. 396; *Miller* v. *Cox,* 38 W. Va. 747. The conveyance of the 30 acres, made subsequent to this suit, was therefore void as to the creditors of W. J. Read; but not so, as to the 80 acres which is attacked only on the ground that the conveyance of it was voluntary. It was conveyed to her before plaintiff obtained his judgment, and more than five years had elapsed without any attack being made on it. The right to avoid it on the sole ground that it was voluntary was barred long before it was assailed.

Nor is the evidence of Mrs. Read sufficient to overcome the effect of the conveyance of the three tracts of land to L. D. Strader, trustee, as collateral security for the White $8,000 debt. She and her husband executed and acknowledged that trust deed, free from fraud or duress. She can not be heard to say that she was ignorant of its contents, or did not know, when she executed it, that it embraced the 80 acre tract of land. It was her duty to know what was in the deed. It was prepared in Maryland and mailed to her at Morgantown where she and her husband then resided, and was there signed and acknowledged and returned to Reynolds. A deed will not be set aside on the ground of a mistake by the grantor alone, when the grantee has been guilty of no wrong or inequitable conduct. *Crim* v. *O'Brien,* 69 W. Va. 754· *Smith* v. *Board of Education of Parkersburg District,* 76 W. Va. 239; 83 S. E. 513; *Fulton* v. *Messenger,* 61 W. Va. 477; *Hale* v. *Hale,* 62 W. Va. 609; and *Acme Food Co.* v. *Older,* 64 W. Va. 255. Inasmuch as the suit was not a proceeding to sell Nora S. Read's land, even to pay the liens admittedly existing on it, it was not error to omit a sale of the 80 acres. The rights of Nora S. Read's creditors to proceed against her land were expressly reserved by the decree. Moreover, the trust deed lien upon her 80 acres was fully satisfied by her son Semmes Read, the purchaser at the

judicial sale, who assumed the payment of the balance due on it, and paid it into court. The 30 acres being liable for the judgments against W. J. Read, it follows that the exceptions taken to the commissioner's report by Nora S. Read because it reported that tract liable for such judgments, were not well founded, and should have been overruled. Her tenth exception was taken because a judgment in favor of M. H. Harvey, recovered on the 8th day of October, 1904, against her and her husband, amounting to $172.69, was reported as a lien upon her land. The judgment itself was attacked on the ground that it had been rendered without personal service of summons upon her. We decline to pass upon the validity of the judgment, on the ground that this is not a proceeding to sell her land. Whether it is a lien on her land, or not, can not properly be determined in this suit, and that is sufficient to sustain the exception. Her eleventh and twelfth exceptions are likewise sustainable on the same ground.

Appellant's third assignment is, that the court erred in striking the cause from the docket, without directing a sale of the 6 acres and 100 poles conveyed to Helen M. Nestor on the 9th of May, 1901, and the 13-1/2 acres conveyed to H. L. Hicks. The commissioner's report states that the conveyance to Hicks was on February 9, 1899, but the court, by its decree, finds the correct date to be February 9, 1898. We do not find the Hicks deed in the record, but the correctness of the date found by the court is shown by a release of lien, as to the Hicks parcel, executed and acknowledged by De Warren H. Reynolds on the 10th of February, 1898. That release recites that the deed to Hicks bears date February 9, 1898. Plaintiff's judgment was, therefore, not a lien upon the Hicks 13-1/2 acres. As to the 6 acres and 100 poles, Helen M. Nestor was a pendente lite purchaser; and we perceive no reason why that parcel should not have been sold to satisfy plaintiff's judgment. The decree provided for a sale of it, in the event enough money to discharge the liens thereon was not realized from the sale of the 71 acres of the Phares land then owned by W. J. Read. It is highly probable that the commissioners appointed to make sale are responsible for the mistake. After having decreed it was

liable, the court would hardly have ordered the cause stricken from the docket without its being sold, the necessity therefor appearing, if the court's attention had been called to the matter.

Numerous cross-assignments of error are made in briefs of counsel representing various appellees. The first assignment by counsel for W. J. Read is, that the court erred in not holding appellant's judgment void for want of service of summons upon said Read. Read averred in his answer that he was not served with summons and did not appear before the justice who rendered the judgment. The transcript from the justice's docket shows the judgment was rendered in default of defendant's appearance, after hearing the evidence. But it recites that summons was returned executed. A copy of the summons, with the return endorsed thereon by E. E. Taylor, Constable, is also made a part of the record. The return states that it was served by delivering a copy of the summons to W. J. Read on March 19, 1898. Mr. Read swears positively he was not served, and says he remembers distinctly that he left his home on that day, early in the morning, to appear as attorney for his wife and son to defend a suit against them, before a justice in another part of the county, and did not return until late that afternoon. As to what he did on that day, he is corroborated by the testimony of both his wife and son. If the constable's return were not conclusive of the fact of service, we would have to say the evidence is sufficient to overcome it. But the return of process by a sworn officer whose duty it is to serve it, showing a proper service must be accepted as a verity. That is the settled law of this state. *McClung* v. *McWhorter,* 47 W. Va. 150; *Rader* v. *Adamson,* 37 W. Va. 582; *Stewart* v. *Stewart,* 27 W. Va. 167; and *Bowyer* v. *Knapp & Martin,* 15 W. Va., opinion page 291. That the service of process in the case at bar was by a constable, whereas in the cases above cited it was by a sheriff, does not distinguish this case from those. There is no reason for applying to it a different rule. The same reasons for holding a sheriff's return conclusive evidence of the manner of service apply equally to the return of a constable. It is a necessary rule in order to give certainty and stability to judicial proceedings. Both sheriff and

constable take the same kind of an oath of office, both are required to give bond, and it is as much the legal duty of a constable to execute writs issuing from a justice's court, as it is of a sheriff to execute writs issuing from a court of general jurisdiction. That a justice has only a limited jurisdiction does not affect the rule, or prevent its proper application to a case of which he has jurisdiction. That the application of the rule may, in some cases, operate harshly, is more than offiset by the great inconvenience that would arise from the uncertainty of judicial judgments and decrees if a different rule obtained. That it does not work a hardship in the present case is apparent. The judgment was rendered in an action on a note, and W. J. Read makes no pretense to a defense thereto.

The judgment is also challenged on the further ground that the justice's docket does not show that he waited one hour after the time set for trial, for defendant to appear, before entering judgment. Sec. 65, Ch. 50, Code, entitles each party to one hour after the time stated in the summons or order of continuance, if there has been a continuance, in which to appear. But Sec. 179, prescribing what particulars shall be noted by the justice in his docket, does not expressly require him to state that fact; and it has been held that his omission to do so does not invalidate the judgment. *Fishburne* v. *Baldwin,* 46 W. Va. 19. Appellant's judgment was founded on a proper summons, appearing by the officer's return to have been duly served upon the defendant, and must, in this proceeding, be taken to be a valid judgment. *Newton* v. *Wade,* 43 W. Va. 283.

Counsel for W. J. Read insist there is nothing due De Warren H. Reynolds as assignee of the White mortgage. He was also the assignee of the Glick mortgage. Both mortgages were upon a business house and lot in Cumberland, Maryland, owned solely by Robert C. Read, brother of W. J. Read, subject to the life estate therein of their mother. She died about the year 1900, and Robert C. Read died on the 17th of January, 1903, leaving W. J. Read his sole heir at law. The property was sold however by Reynolds, under the grant of power contained in the Glick mortgage, nearly two years before Robert C. Read's death. It also appears that the

trustees in the Maryland deed of trust had also sold and collected the proceeds from all of W. J. Read's Maryland property. Counsel for Reynolds contend that, after full and complete disbursement of all the proceeds from the sale of the Maryland property, there yet remains due him, as assignee of the White mortgage, the sum found by the commissioner in this cause. Before a complete application was made of the proceeds of the Maryland property, W. J. Read instituted a suit in the circuit court of Allegany county, Maryland, against said Reynolds, the purpose of which was to avoid the sale of the Baltimore Street property and to have an accounting. Reynolds answered his bill, and the cause went to the court of appeals of that state, resulting in a dismissal of plaintiff's bill. Reynolds filed his special replication to Read's answer in the present suit vouching the record in the Maryland suit and relying upon it as an adjudication of the matters averred in his answer in this suit. The Maryland court had jurisdiction of both the subject matter and the parties, and its final decree is certainly res judicata of all the matters therein involved. No authorities need be cited to sustain this proposition. The cause was there submitted upon bill, answer and exhibits, and the rule of practice obtaining in that state is, that when a case is thus submitted, "all the averments of the answer, whether responsive to the allegations of the bill or in avoidance of it, are to be taken as true." *Reyston* v. *Horner*, 75 Md. 557. It was determined by that suit that the Glick mortgage was not given to secure a debt created for the benefit of W. J. Read, and that, therefore, it was not a debt to be paid out of the trust property conveyed to Reynolds, Henderson and Thomas, Trustees. It also determined that Reynolds, as assignee of the Glick mortgage, had a right to purchase the mortgaged property and that his purchase thereof was valid; that he has properly accounted for the rents, issues and profits derived therefrom before the sale took place; that, by the terms of the Glick mortgage, he was entitled to a commission of $1,212 for making the sale; that, in respect of the mortgaged property, Reynolds was not a trustee for W. J. Read; and that the Glick mortgage was not upon his property, nor did the subsequent deed of trust executed by W. J. Read and wife em-

brace the Glick note as a debt to be paid by the trustees out
of the trust fund. That sale under the Glick mortgage had
been confirmed, and under the law of Maryland could not
thereafter be impeached on the sole ground that the mort-
gagee had become the purchaser. Art. 66, Sec. 14, General
Laws of Maryland. *Chilton* v. *Brooks,* 71 Md. 445; *Dircks* v.
*Logsdon,* 59 Md. 173. It also determined that, after payment
of the Glick mortgage, the commissions and taxes on the
Robert C. Read property, there remained in the hands of
said Reynolds the sum of $5,901.68 to be applied on the
White mortgage; and that, of the trust funds derived from
the sale of W. J. Read's property, there remained in the
hands of the trustees the sum of $2,624.71, which was like-
wise applicable to that mortgage. W. J. Read is now
estopped to controvert any of those matters in this suit.
He can not go behind that decree. The opinion and final
order in that case was pronounced by the appellate court on
the 17th of September, 1904. This suit was then pending in
Randolph county. There were two judgment liens upon the
Baltimore Street property, subsequent to the White mortgage.
Those judgments were against Robert C. and W. J. Read, one
in favor of M. R. Welch and Ida F. Welch for $2,076.63,
rendered by the circuit court of Allegany county, Maryland,
on the 12th of April, 1897, and the other rendered by the
same court on the 13th of December, 1897, in favor of R. D.
Johnson for $2,506.00. These liens were set up in plaintiff's
bill, and admitted by respondent's answer in the Maryland
suit. In respect of the Welch judgment, plaintiff averred
that Robert C. Read was principal and himself only surety.
Both judgments, however, were admittedly liens on the Balti-
more Street property. As an excuse for not having applied
the funds then admitted to be in his hands, respondent
averred, that before an audit had been made and ratified in
the mortgage sale proceeding, petitions had been filed by
Johnson and the Welch heirs, asking to have the assets
marshalled, and that an order of court had been made and
served upon him, which prevented his applying the balance in
hand to the White mortgage. This averment was not con-
troverted and it explains why, at the time the final decree
was made, there was yet in respondent's hands the sum of

$5,901.68, derived from the sale of the mortgaged property. As shown by a subsequent audit, that sum, together with the sum of $2,624.71 derived from the trust funds, was applied on the White mortgage, leaving the balance due thereon found by the commissioner in this case. That balance was secured by the trust deed on the West Virginia lands.

Numerous other cross-assignments are made by other appellees. They all relate to questions raised by the exceptions of W. J. Read and wife to the commissioner's report, and are practically disposed of in the foregoing opinion.

In so far as the decrees of June 12, 1913, and March 6, 1914, appealed from decide that the judgments against W. J. Read are not liens on the Butcher tract of 30 acres, and that the judgments docketed against him before the 6 acres and 100 poles was conveyed to Helen M. Nestor are not liens on said 6 acres and 100 poles, they will be reversed; and the cause will be reinstated on the docket and remanded to the circuit court for the sale of those tracts, and for the application of the proceeds in the manner and according to the priorities ascertained by the decree of June 12, 1913. In all other respects the decrees will be affirmed, with costs to appellant against W. J. Read.

*Affirmed in part. Reversed in part. Remanded.*