# CHARLESTON.

NUTTALLBURG SMOKELESS FUEL CO. *v.* FIRST
NATIONAL BANK ETC.

NUTTALLBURG SMOKELESS FUEL CO. *v.* THE PULLMAN
STATE BANK.

Submitted November 1, 1921.    Decided November 8, 1921.

1. PROCESS—*Officer's Return Indorsed on Summons is Prima Facie Evidence of Service, and May be Overthrown.*

Upon a proceeding to vacate a judgment taken by default in a case in which the defendant had no notice of the pendency of the action in any manner or form, the return of the officer endorsed upon the summons is only *prima facie* evidence of service and may be overthrown by proof of such lack of notice.    (p. 440).

2. JUDGMENT—*Bill Will Lie to Vacate Default Judgment in Law Action Based Upon False Return.*

A bill in equity will lie to vacate a judgment rendered in consequence of such return, upon proper allegations that

89 W. Va.

the return was in fact false, that the person so served was not the president of such corporation, that no notice, actual or constructive, was received by the corporation of the pendency of such action at law, and that the corporation had a just defense to the action at law, and was prevented by such false return from asserting it. (p. 448).

Appeal from Circuit Court, Kanawha County.

Two suits by the Nuttallburg Smokeless Fuel Company against the First National Bank of Harrisville and others, and one by the same plaintiff against the Pullman State Bank and others. Bills dismissed, and the plaintiff appeals. Suits considered together.

*Reversed, demurrer overruled, remanded.*

*E. B. Dyer* and *Morgan Owen,* for appellant.

*S. A. Powell,* for appellees.

LIVELY, JUDGE:

From decrees of the circuit court sustaining demurrers to and dismissing its bills, plaintiff obtained appeals.

The same questions arise in each of these three cases and they will all be considered together. A discussion of and decision in the Bank of Harrisville case will dispose of the others.

Plaintiff, a corporation, alleges that defendant, on the 10th of November, 1920, obtained a judgment against it and T. C. Beury for $5253.45 in an action of debt, in the Circuit Court of Kanawha County, without any appearance by or knowledge of plaintiff, on certain notes claimed to have been signed by plaintiff, payable to T. C. Beury, and by him endorsed to defendant; that no process was served on plaintiff; and that execution was issued and levied on plaintiff's property. The bill further alleges that on March 9, 1920 T. C. Beury was president of plaintiff corporation and then issued said notes, payable to himself and sold and endorsed the same to defendant bank, without the knowledge or consent of plaintiff corporation, and received and used the proceeds for his own personal ends, without knowledge of plaintiff; that the defendant bank knew that such notes were not authorized by

the corporation; that Beury had no authority to so issue or use them, and that the money derived therefrom was to be used by him for his personal ends. It is charged that the making of the notes was ultra vires, the notes void, and the defendant bank had knowledge of these facts. It is alleged that the judgment was obtained solely on the affidavit filed with the declaration; that the notes were not produced in court; and that a fraud was practiced on the court in obtaining judgment without producing the notes; that after the notes were so negotiated, and before said suit in debt was begun, the entire stock and assets of plaintiff corporation were sold and transferred to the Ford Motor Company and new directors and a new president of the corporation were elected on July 7, 1920, and that T. C. Beury was not the president of the corporation at the time service of process in said action in debt was served on him as such on the 26th of July, 1920; that no process was served on plaintiff, and it knew nothing of said suit until the execution was levied as aforesaid. The bill prayed that the judgment be annulled. and declared void as to plaintiff, the sheriff be enjoined from selling under the execution, and for general relief. A demurrer was interposed by the bank and sustained, and the bill dismissed on May 16, 1921.

The return of the sheriff on the summons in debt reads:

"Executed the within process on the within named *Nuttleburg* Smokeless Fuel Company, a corporation, on the 26th day of July, 1920, by delivering a true copy thereof in writing in Kanawha County, West Virginia, wherein he resides, to Thos. C. Beury the President of said corporation.

S. B. Jarrett, S. K. C.
By J. H. Windell, D. S. K. C.''

This record presents one controlling question: Is the return of the sheriff conclusive, having been served on Beury as president of the corporation, when in fact he was not president and had no connection with the corporation? If the service of process is conclusive, then plaintiff had legal notice

of the action in debt and its defenses of fraud and want of consideration, should have been pleaded in that suit, and, if sustained, would have prevented recovery. *Prewett* v. *Bank,* 66 W. Va. 184. If it was legally summoned, and neglected to set up these defenses, it can receive no relief in equity for its neglect. The decisions of the states of Virginia and West Virginia have held to the common law doctrine that a sheriff's return of process in a suit is conclusive, if sufficient on its face, and cannot be attacked by parties and privies to the suit. *Milling Co.* v. *Read,* 76 W. Va. 557; *Talbott* v. *Oil Co.,* 60 W. Va. 423; *McClung* v. *McWhorter,* 47 W. Va. 151; *Rader* v. *Adamson,* 37 W. Va. 582; *Stewart* v. *Stewart,* 27 W. Va. 167; *Bowyer* v. *Knapp,* 15 W. Va. 290; *Sutherland* v. *Bank,* 111 Va. 515 and Virginia cases cited there.

The reason for the rule given in our decisions does not seem to have been examined at length. They recognize it as a harsh rule, but it is said, "its harshness is offset by the great inconvenience that would arise from uncertainty of judicial judgments and decrees." *Milling Co.* v. *Read, supra,* p. 569. In *Stewart* v. *Stewart, supra,* it is stated that others besides the defendants are interested that the return should be regarded as true; that rights of property would suffer under any other rule, and that sufficient protection to the injured is conserved by right of action against the officer for false return. In that case the rights of others had intervened. It is asserted there that the rule at common law should be followed, and if it is thought wise to change the rule, the legislature should furnish the remedy. The evils and great inconveniece which would arise from the uncertainty of judicial judgments and decrees seems to be more imaginative than real. Experience, to the great practical test, has demonstrated that no harm to the stability and certainty of judgments and decrees has resulted in the jurisdictions where the common law rule of verity in the return has been abolished. On the contrary, we hear no challenge or outcry for that reason, or for any other reasons from the thirty-four states which have either abolished or modified the verity rule, and the bench and bar of those states seem to be well satisfied. This rule is a heritage from ancient English law, formulated

in times and under conditions which have very little resemblance to modern times and affairs; and, like a great many other ancient rules, has been meeting with disapproval in the transition of modern progressive jurisprudence. It has been abandoned by the courts in twenty-one of the states, by the federal courts, abolished by legislation in six others, and modified materially by the courts in seven other states. Eight states, including West Virginia, yet retain it. Another reason for the rule, not stressed by our decisions, is that the sheriff is a sworn officer to whom the law gives credit, and that he and his bondsmen are liable for damages caused by a false return. It seems somewhat anomalous, in present day affairs, that the law should give more credit to a statement of the sworn officer in his return than it does in the suit against him for damages for false return. In the latter instance his oath is of no superior sancity than that of the complainant and his witnesses, and there it becomes a jury question to be decided according to the rules for ascertainment of fact as in other cases. His return is as much of an official act in case of a suit on his bond, as when questioned by a plea in abatement in the original suit, or in any other suit between the litigants relating thereto. If the law gives credit in the first instance, it seems logical that it should give the same measure of credit in the other instance, where the exact question is at issue. The remedy on the bond is a confession of the weakness of the verity rule; for it is an admission that the officer might make a false return; that he is not made infallible by being selected and sworn as an officer. The selection of officers by modern election methods is no index of sanctity or infallibility.

When the verity rule was anciently formulated, the sheriff was a high and important officer, the king's own representative, armed with the king's writ, and partaking of the king's fiction that he could do no wrong. He was the king's emissary rather than the court's officer. When the verity doctrine made its bid to be embodied in judicial procedure, the times were feudal, the sovereigns were supreme, with almost unrestricted powers over life and property. The high sheriff was his agent and executive officer. His acts were, in a sense,

the acts of the king, and not to be questioned.   Having become adopted and followed for many years and transmitted to America, it was first followed as a matter of course by many of the states, including Virginia, and a mere statement of the rule seems to have become sufficient for its adoption and continued existence in this State, without consideration of its reasonableness or its adaptability to changed conditions.

It is axiomatic that wherever there is a wrong there is a remedy; and the only remedy imposed under the verity rule, the suit for false return, is illogical and cumbersome when carefully considered.   The remedy may be ineffective, as it is within common knowledge that sheriffs often become insolvent, and their bonds exhausted by liabilities.   But why limit the injured litigant to this remedy alone?   And what is the logical result of such exclusive remedy?   A sues B. and the process is not served on B. but on some other person, but the return says it was on B.   The mistake is made innocently by the sheriff and the return made in good faith.   A obtains judgment and receives money to which he may not be entitled.   B. not only suffers by payment of the judgment but it is required to expend time and expense in a suit against the sheriff which may fail of full or even partial fruition, for reasons above suggested; and, if the sheriff is financially able, he is compelled to pay heavily for any innocent mistake.   All of this litigation would have been saved, and the damages minimized, if the mistake could have been shown at the outset, in the original suit, or in a suit between the original parties; and the true facts would more likely be ascertained in such a proceeding, than in a suit on the sheriff's bond. Thus the sheriff's liability would be lessened, confined to the expense, if any, of ascertaining and correcting the mistake, and would save a possible miscarriage of justice.   The policy of the law is to save a multiplicity of suits.   The sheriff is allowed to amend his return to show the true facts; and even the court's record may be corrected to show the true facts upon strong and impregnable proof, in a proceeding for that purpose.   The sheriff's return should not be more sacred than the solemn record of the court.   As stated, the courts in the majority of the states have abolished the rule of verity

as not consonant with modern procedure, and now permit a direct attack in the same court where the process is returned in the same action, or by procedure to vacate the judgment. *Paul* v. *Malone,* 87 Ala. 544; *Kavanaugh* v. *Hamilton,* 53 Colo. 157; *Buckingham* v. *Osborne,* 44 Conn. 133.    (It seems that Connecticut has never held to the verity doctrine.) *Hilt* v. *Heimberger,* 235 Ill. p. 235; *Bowden* v. *Hadley,* 138 Ia. 711; *Sloan* v. *Menard,* 5 La. Ann. 218; *Taylor* v. *Welslager,* 90 Md. 409; *Lane v. Jones,* 94 Mich. 540; *Knutson* v. *Davies,* 51 Minn. 363; *Burke* v. *Inter-State Savings,* 25 Mont. 315; *Bankers' Life Ins. Co.* v. *Robbins,* 53 Neb. 44; *Higley* v. *Pollock,* 21 Neb. 198; *Holtovitsky* v. *Little Russian Church,* 78 N. J. Eq. 576; *Wheeler & Wilson Mfg. Co.* v. *McLaughlin,* 8 N. Y. Supp. 95; *Burlingham* v. *Canady,* 156 N. C. 177; *Kingsborough* v. *Tousley,* 56 Ohio St. 450; *Ray* v. *Harrison,* 32 Okla. 17; *Genobles* v. *West,* 23 S. C. 154; *Randall* v. *Collina,* 58 Tex. 231; *Ill. Steel Company* v. *Dettlaff,* 116 Wis. 319; and *Mechanical Appliance Co.* v. *Castleman,* 215 U. S. 437 (holding that the State rule, that the sheriff's return was conclusive, should not be followed by the federal court sitting in that State).    See also *Earle* v. *McVeigh,* 91 U. S. 503. In *Ray* v. *Harrison, supra,* the Oklahoma court said:    "It is fundamental that a judgment rendered without notice is void, and to make an officer's return, which is false, conclusive evidence against the truth, is not in harmony with reason or justice, and we think the better rule is, that while such a return is prima facie evidence of its truthfulness, and while it requires clear and convincing proof to set it aside, it is the duty of the court when evidence meets this test, to act upon it and not permit an established falsehood to stand as true." Kansas seems to have modified the rule, holding that the return is conclusive as to all facts presumptively within the knowledge of the officer, but prima facie evidence only of facts which he would have to get by inquiry from others.    *Schott* v. *Linscott,* 80 Kan. 536.    The state of Washington seems to follow the Kansas decisions.    *Wilbert* v. *Day,* 83 Wash. 390. See also *Carr* v. *Commercial Bank,* 16 Wis. 50; where the sheriff's return stated notice served on H. S. D. President, judgment was taken by default, and afterwards vacated up-

on evidence showing that H. S. D. was not president, or any other officer of the bank at the time of service.

In Arizona, California, Idaho, Utah, Georgia and Mississippi, statutes have been passed declaring the sheriff's return to be prima facie correct, and allowing it to be disputed.    In Indiana, Kentucky, Massachusetts and Rhode Island, the verity rule has been relaxed to an appreciable degree by construction of remedial statutes; *Nietert* v. *Trentman,* 104 Ind. 390; *Bramlet* v. *McVey,* 91 Ky. 151; *Brewer* v. *Holmes,* 1 Metc. (Mass.) 288; *Locke* v. *Locke,* 18 R. I. 716. In *Brewer* v. *Holmes, supra,* Chief Justice Shaw said: ''It is said that the petitioner would have a remedy upon the officer for a false return, and, on showing his defense to the first action, recover back from him the amount he had been compelled to pay.    Supposing he could, which may be doubted, the result would be that the present respondent, the original plaintiff, would have a sum of money, which, in the case supposed, he had no just claim to recover, and the officer would be compelled to pay a like sum for a slight and perfectly innocent mistake.    An officer goes to a house to leave a summons with John Smith; not knowing the person, he is led to believe, without fault of anybody, that his brother James Smith is the man he is looking for, and he leaves the summons with him and makes his return according.    This is a false return.    If somebody must necessarily suffer loss, in consequence of this mistake, it is no doubt right that it should fall on him who made it.    But if it is seasonably discovered, in time to prevent loss to anybody, why should not the remedy be applied, and the rights of all parties be saved?    The effect of a review will be simply to give the petitioner opportunity to make a defense.''

Arkansas has also practically abolished the verity rule. *Wells Fargo* v. *Baker Lumber Co.,* 107 Ark. 415.

The courts of Maine, Missouri, New Hampshire, Pennsylvania, Tennessee, Vermont, Virginia and West Virginia yet adhere to the verity doctrine.  The Pennsylvania court formerly showed indications of breaking away from the ancient doctrine, but recently has affirmed it (three judges dissenting) in  *Holley* v. *Travis,* 267 Pa. 136; and in *Miller*

*Paper Co.* v. *Keystone Coal and Coke Co.*, 267 Pa. 180. In the latter case the reason is given that the summons is a part of the record of the court and not subject to attack.

We have directed attention to the decisions of the various states and to legislative action to show that judicial analysis has undermined the reasons anciently given for support of the verity rule, and that the doctrine has been recognized as unsuitable to modern conditions. The discussions are instructive and illuminating. It will be noted that while our own decisions have followed the verity doctrine, there is but one case, *McClung* v. *McWhorter*, 47 W. Va. 151, where it was not clearly shown that the party complaining had some notice of the pending suit, or failed to show that he had a just defense. We have discountenanced special appearances to quash, where the parties have been served with process or had actual notice. The object of process is to bring the defendant into court where a hearing will be accorded, and not much grace or consideration has been given to one who admitted that he had received actual or constructive notice, but claimed there was some technical defect in the manner of service. Perceiving that no harm had come to him, or that he was in fault, and had slept on his rights, we have refused to consider purely technical grounds, and the strict rule has been invoked by its mere statement and without analysis of the reason. In *Milling Co.* v. *Read, supra,* defendant averred in his answer in the chancery suit that he had not been served in the suit on the note before the justice, but did not say that he was ignorant of the pendency of the suit, and made no pretense whatever of a defense to the note. In *Talbott* v. *Oil Co.,* 60 W. Va. 423, defendant appeared specially *on the trial* and averred that process had not been served on it, and then withdrew. Judge Poffenbarger pointed out that "there was notice in point of fact. Defendant appeared and attempted to take advantage of the mistake of the officer." There the defendant with full notice relied on a technicality. Judge Poffenbarger impliedly questioned the verity doctrine, for after stating it he says: "If this rule is sound it must apply to judgments by default" etc. (page 425). In *Rader* v. *Adamson,* 37 W. Va. 595, the process was served by an in-

dividual who made oath to the service, and the question of verity seems not to have been passed upon, reference being made to *Bowyer* v. *Knapp,* 15 W. Va. 298, as stating the rule. However, the defendant appeared, set up want of proper service, then demurred and answered.    He had notice, and was in court with a technical defense based on the service of the summons.    In *Stewart* v. *Tennant,* 27 W. Va. 167, defendant had been served with the summons while in another state, and had been advised by counsel there that the process was not binding on her, and she made no appearance until nearly three years later, after the rights of others had intervened. In *Bowyer* v. *Knapp, supra,* the question arose on a sheriff's return of a notice to take depositions, where the return was held to be prima facie true only.    Even in *McClung* v. *Mc-Whorter, supra,* one of the grounds for refusing relief in equity was that complainant did not aver that he had a defense to the judgment obtained on a false return.    But it must be conceded that that decision expressly, and some of our other decisions tacitly commit us to the verity doctrine. Shall we remain so?    Here is a case which emphasises the harshness of the doctrine, and impels more careful analysis of the reasons on which it is based.    Plaintiff, according to the averments of the bill which are not now questioned, is about to be forced by execution to pay large sums of money, which it does not owe, by reason of judgments obtained on false returns, innocently made, no doubt.    It never had any notice, actual or constructive, of the pendency of the suits, and has a just defense to the claims on which they are based.    Are the sheriff and his bondsmen financially responsible if redress is sought on his bond and judgment obtained?    The rights of no third party have intervened.    If defendants here are not entitled to the moneys, appellants having a just defense is it in good conscience that they should take it, because of an innocent mistake?    The results of the abolishment or abridgment of the verity doctrine in other states have demonstrated that the main reason given to sustain it, namely, that inconvenience would arise from uncertainty of judgments and decrees, is more of fancy than of fact; and we have concluded that a sheriff's return should not be deemed to be conclusive-

ly true as against a direct attack seasonably made after judgment by default, where it is known that the return is false and that defendant had no knowledge whatever of the pendency of the action, and where no rights of third parties are jeopardized. We have attempted in this opinion to draw a distinction in cases of judgment by default upon no notice either actual, presumptive or constructive; and where there has been notice and a technicality is relied upon, or where the defendant has appeared, and denies service, but has opportunity to defend. In the latter instance we would deny the right to question the return.

It may be proper to say that the evidence necessary to accomplish an overthrow of a false return should be clear, satisfactory and convincing. *Kavanaugh* v. *Hamilton,* 53 Colo. 157; *Raulf* v. *Chicago Brick Co.,* 138 Wis. 126; *Kochman* v. *O'Neill,* 202 Ill. 110. But as this question does not arise here, we state the quantum of evidence as of first impression. "Equity may vacate or enjoin the judgment of a court of law when it is shown to be unjust and that the court rendering it never had jurisdiction of the person of the defendant, although assuming it, in consequence of a false return of service by the sheriff or other officer."

We reverse the decree, overrule the demurrer and remand the cause.

*Reversed and remanded.*