STATE OF WEST VIRGINIA

v.

ERNEST EDGAR JUSTICE

(No. 9913)

Submitted September 17, 1947. Decided November 4, 1947.

*Clay S. Crouse* and *Jno. Q. Hutchinson,* for plaintiff in error.

*Ira J. Partlow,* Attorney General, and *J. Chandler Curd,* Assistant Attorney General, for defendant in error.

RILEY, JUDGE:

Ernest Edgar Justice prosecutes this writ of error to the judgment of the Circuit Court of Raleigh County, refusing a writ of error to a judgment of the criminal court of that county adjudicating defendant guilty of subornation of perjury, and sentencing him to the penitentiary for a term of not less than one year nor more than ten years.

By an order of the criminal court, entered on March 19, 1946, the Grand Jury of Raleigh County returned the following indictments, to-wit: "An indictment against Ernest Edgar Justice for felony, No. 1813, * * *." The indictment itself consists of two counts, the first of which charges that defendant did "unlawfully, feloniously and wilfully induce, procure and suborn the said Hanley Richard* to wilfully and corruptly testify falsely" before the Grand Jury of Raleigh County, respecting the alleged murder of one D. T. Perkins. The second count charges that defendant did "unlawfully and willfully induce and procure the said Hanley Richard to wilfully and corruptly swear falsely, in and before said Grand Jury * * *," concerning the alleged murder. The trial

---

* Inasmuch as the suborned person's name, other than in the indictment and instructions, is referred to as "Richards", for the purposes of this opinion we adopt that spelling.

court having overruled defendant's demurrer to the indictment, defendant filed a plea that he "is not guilty in manner and form of subornation of perjury, as the State in its indictment against him herein hath alleged * * *." After an unusually long trial the jury found defendant "guilty as charged in the within indictment." Thereupon defendant moved the court to set aside the verdict of the jury and in arrest of judgment, and that defendant be granted a new trial, which motions were overruled.

On the evening of September 10, 1945, D. T. Perkins, while engaged at his occupation in defendant's store, was shot and killed. The building in which the homicide occurred was a two-story structure, the second floor then being used as a dwelling by defendant and his wife, and the lower for a store and post office. At the time of the homicide defendant was at the town of Odd, Raleigh County, about seven miles distant, where he had gone with other persons for the purpose of buying meat. Upon his return he found members of the Department of Public Safety at the scene of the homicide conducting an investigation. Shortly after the homicide defendant conferred with the state police, offered money for the production of the gun for ballistic purposes which was supposed to have been used in the homicide, and discussed with the officers conducting the investigation the matter of contributing to a reward.

Richards, the person charged in the instant indictment to have been suborned, and his wife, Edna, according to their testimony, were at their home at the time of the homicide, and did not learn of it until the following morning. They testified, however, that defendant took them to the office of W. A. Thornhill, an attorney practicing in Raleigh County, where they made separate written statements to the effect that they had seen from a position outside defendant's building, Ivan Grose and Richard McVey commit the homicide. These statements were to the effect that they (the Richards) arrived at the rear of Justice's store by automobile, and saw two men, whom they recognized as Grose and McVey, the former of whom

entered the cellar of the building by an outside door on the side of the store and was later seen through a window to come into the room where Perkins was working and, after demanding that Perkins open the safe, Grose was seen to shoot Perkins twice.

The Richards lived at Princewick in Raleigh County. Defendant went there and brought them to Beckley for the purpose of testifying before the grand jury in the Grose-McVey proceeding, which, according to defendant, was done in pursuance of arrangements made with the Prosecuting Attorney of Raleigh County and members of the Department of Public Safety. From the testimony of the official reporter, who took the evidence as to the happenings before the grand jury in the Grose-McVey proceeding, defendant testified substantially in accordance with the statement which he had made in Thornhill's office. On the basis of this testimony, Grose and McVey were indicted for murder. Thereafter the state police questioned Richards and his wife, who stated to the police that the testimony they had given before the grand jury was false, and that defendant had induced them so to testify on the promise of a reward. To that effect, they gave written statements to the prosecuting attorney. Thereafter and prior to the instant trial Richards was indicted for perjury in the Criminal Court of Raleigh County, and upon his plea of "guilty," sentenced to the penitentiary. The indictment, the order setting forth the plea and the judgment of guilt and sentence were introduced into evidence over defendant's objection.

Richards testified in the instant trial that his testimony before the grand jury in the Grose-McVey case was false, and that Justice had induced and prevailed upon him so to testify.

After Richards had testified before the grand jury in the Grose-McVey case, R. L. Tabscott, a member of the Department of Public Safety, was permitted to testify over objection that he went to Princewick and brought Richards to state police headquarters in Beckley, where

Richards stated to him and A. Scalise, another member of the Department of Public Safety, that the statements which he and his wife had made at Thornhill's office were false, and that they had been induced to make the statements upon the promise of a reward of two hundred dollars; that after making such statement the prosecuting attorney appeared at headquarters and a detailed statement was taken from Richards by him. Further the witness Tabscott was permitted to testify over objection that after the interview at state police headquarters, the prosecuting attorney, Scalise, Richards and the witness Tabscott went to the Richards' home, where the prosecuting attorney took a statement from Edna Richards that "She had been induced by Mr. Justice to make this previous statement that she had made at Mr. Thornhill's office in Beckley." The State also introduced testimony, by the two officers, of interviews with one Lucille Alexander.

After the court had overruled defendant's objection to the introduction in evidence of these statements and interviews, the court sustained defendant's motion, in which the State joined, that they be stricken from the record, and instructed the jury not to consider the evidence of the witness Tabscott with reference to these interviews and statements of Hanley Richards, Edna Richards, and Lucille Alexander as to any matters tending to incriminate defendant; but overruled defendant's motion for a mistrial.

Scalise was permitted to testify over defendant's objection that "I talked to him [Richards] some time about that and asked him if the boys were innocent or guilty; if guilty we wanted to know it; and if not guilty we wanted to know it, and he [Richards] finally said he wanted to tell the truth and changed his statement there."

Counsel for defendant on another occasion during the trial invited the court's attention to the fact that the court had theretofore instructed the jury to disregard all of the testimony of the witness Tabscott concerning his conversation with Richards at police headquarters in defend-

ant's absence, and thereupon the court instructed the jury in the following language: "Well, regardless, I am instructing the jury that if this witness made any statement concerning Hanley Richards' interview at state police headquarters incriminating Mr. Justice you will disregard it."

During the course of the opening statement Fletcher W. Mann, special prosecutor, stated that the State would prove that "Hanley Richards appeared at the headquarters of the state police detachment here in Beckley, and admitted that everything that he had testified to before the grand jury about those boys was wholly false," and "that Hanley Richards had confessed his crime and pleaded guilty to the charge, meaning the charge of false swearing on which Mr. Justice, this defendant, * * * is charged with having induced"; and thereupon counsel for defendant moved the court for a mistrial which motion was overruled.

Defendant also objected to the testimony of the clerk of the criminal court that Richards had been indicted by the grand jury for perjury in testifying falsely before the grand jury in the Grose-McVey case; and that he had been arraigned on the indictment and pleaded guilty to the charge therein. Likewise defendant objected to the introduction into evidence of the indictment, the court order showing Richards' plea of guilty, and the judgment of sentence entered thereon.

The criminal court having entered the order of March 19, 1946, to the effect that defendant was indicted for perjury, the threshold question presented by this record is: Does the indictment conform to the order? In the first place it is to be noted that the first count of the indictment uses the word "feloniously," whereas that word is omitted from the second count of the indictment. Code, 61-5-1, defines perjury and subornation of perjury, as follows: "To willfully testify falsely, under an oath or affirmation lawfully administered, in a *trial* of the witness or any other person for a felony, concerning a material

matter or thing, is perjury and is a felony; to induce or procure another person so to do is subornation of perjury and is a felony." (Italics supplied). And false swearing is defined in Code, 61-5-2, as "To willfully swear falsely, under oath or affirmation lawfully administered * * * on any occasion other than a trial for a felony, concerning any matter or thing material or not material, or to procure another person to do so, is false swearing and is a misdemeanor." So the question arises on the first count of the indictment: Are the proceedings before the grand jury "a trial" for a felony within the meaning of Code, 61-5-1?

Code, 62-3-2, provides: "A person indicted for felony shall be personally present during the *trial* therefor." (Italics supplied). *State* v. *Parsons,* 39 W. Va. 464, syl., pt. 2, 19 S. E. 876, held that: "In felony cases the accused must be present in his own proper person from the inception of the trial upon the indictment to the final judgment inclusive, when anything is done affecting him; and the record must show his presence." In our practice, the proceedings before a grand jury are *ex parte* in their very essence, and the presence of the accused is not required. So the alleged suborned testimony was not given during a trial for a felony, and the first count of the indictment does not charge a felony. In so holding, we do not agree with counsel for defendant that the sole deciding question is whether the testimony is material or immaterial. Reading, Code, 61-5-1, and Code, 61-5-2, *pari materia,* the alleged perjured testimony must be adduced during a trial for a felony, otherwise the giving of such testimony is simply false swearing. But may the first count be interpreted as charging false swearing, and, therefore, a misdemeanor under Code, 61-5-2, which reads: "To wilfully swear falsely, under oath or affirmation lawfully administered * * * on any occasion other than a trial for a felony, concerning any matter or thing material or not material, or to procure another person to do so, is false swearing and is a misdemeanor." In *State* v. *Hupp,* 31 W. Va. 355, 6 S. E. 919, it was held that an indictment purporting to charge a felony which is not sufficient for such purpose

may be regarded as an indictment for a misdemeanor. The first count, satisfying the requirement of Code, 61-5-2, charges false swearing and the second count charges such offense in express language. As the record contains an order to the effect that defendant was indicted for a felony and the trial was had upon an indictment for a misdemeanor, this case comes within the scope of *State* v. *Whitt,* 39 W. Va. 468, 470, 19 S. E. 873, which held that where a recorded order recited that defendant was indicted for a felony, and the indictment was good only for a misdemeanor "there is an irreconcilable conflict between the two [the order and the indictment], and, treating the record as an absolute verity, it can not be contradicted." But since the *Whitt* case was decided this Court has receded from the "verity" rule. In *Nuttallburg Smokeless Fuel Co.* v. *First National Bank of Harrisville,* 89 W. Va. 438, 109 S. E. 766, it was held, subject to the limitations set forth in the opinion, that the return of an officer indorsed upon a summons is only *prima facie* evidence of service and may be overthrown by proof of lack of such notice. Then in *Taylor* v. *Taylor,* 128 W. Va. 198, 36 S. E. 2d 601, the Court remarked in its opinion that, on the question of service of process, the recitals in a decree are not a verity and may be rebutted by proper showing. In so departing from the verity rule, as applied to recitals in a decree, the *Taylor* case virtually disapproved the decisions in *Central District & Printing Telegraph Co., etc.* v. *Parkersburg & Ohio Val. Elec. Ry. Co.,* 76 W. Va. 120, 85 S. E. 65; *White* v. *White,* 66 W. Va. 79, 66 S. E. 2; *Darnell* v. *Flynn,* 69 W. Va. 146, 71 S. E. 16. Notwithstanding the holding in the *Whitt* case, we are of the opinion that the record to the effect that defendant was indicted for a felony is nothing more or less than a recital as to what happened before the grand jury, and being such comes within the language used in the opinion in the *Taylor* case. It follows that the *Whitt* case to the extent that it holds that there was an irreconcilable conflict between the record of an indictment for a felony and an indictment charging a misdemeanor, is disapproved.

Our attention is invited to the fact that defendant pleaded "not guilty in manner and form of subornation of perjury, as the State in its indictment against him herein hath alleged." The defendant having been charged in the indictment with a misdemeanor, the reference to subornation of perjury contained in the plea may be regarded as surplusage and the plea, in our opinion, serves to raise an issue on the indictment sufficient for trial thereon.

Error is assigned to the trial court's action in overruling defendant's motion for a mistrial based upon a statement contained in the opening statement of the special prosecutor to the effect that defendant appeared at state police headquarters in Beckley and admitted that everything that he had previously testified to was false. It is contended that this statement is tantamount to an announcement on the part of the prosecutor that defendant was to be tried without being confronted with the witnesses. Of course, it is the constitutional right of everyone being tried for crime to be confronted with the witnesses who testify against him. West Virginia Constitution, Article III, Section 14; but we do not think the statement objected to should be given the innuendo suggested by counsel for the defendant.

It is also contended by defendant that by the instruction to the jury to disregard the statements made to the state police in the absence of defendant, the trial court submitted to the jury a question of law in that the court told the jury to disregard any statements tending to incriminate defendant. We do not agree with this position. The word "incriminate" has a common and accepted meaning. In Webster's New International Dictionary, Second Edition, Unabridged, page 1260, it is defined: "* * * to accuse one of a crime * * *. To charge with a crime or fault * * *."

Defendant also assigns as error the trial court's ruling in permitting the introduction of the indictment, the plea of guilty and the order of sentence on such plea in the

Richards case. Inasmuch as Hanley Richards is the person charged in the indictment as having been induced to commit false swearing, it was necessary for the State, in order to establish its case, to prove that Richards testified falsely before the grand jury, and we can conceive of no better way than by exhibiting to the jury the record evidence of his conviction for such offense.

And, finally, defendant asserts error in the refusal of the trial court to give defendant's instruction No. 9, which reads: "The Court instructs the jury that criminal intent on the part of defendant is necessary to a conviction in this case and unless you believe beyond a reasonable doubt, from the evidence that defendant, at the time of the happening of the events testified to in this case, entertained a criminal intent, you should find the defendant not guilty." Whether this instruction should have been given, we need not say, as we are of opinion it is fully covered by the giving of defendant's instruction No. 15, which reads as follows: "The Court instructs the jury that unless you believe it has been proven in this case beyond a reasonable doubt and to a moral certainty the defendant wilfully persuaded, induced or procured Hanley Richard to swear falsely before the grand jury and as charged in the indictment in this case, you should find defendant not guilty." The latter instruction seems more nearly than defendant's proffered instruction No. 9 to conform with the wording of the statute (Code, 61-5-1, 2), which provides that perjury or the subornation thereof or false swearing shall be "wilfully" done.

The defendant having been tried under an indictment charging false swearing which, under Code, 61-5-2, is a misdemeanor, the Court erred in entering a judgment of sentence for a felony, but such error does not merit a new trial. The judgment, however, must be reversed for the purpose of entering a proper sentence on the verdict, which, in view of the fact that the indictment charges only a misdemeanor, is a verdict of guilty for such offense. *State* v. *Hupp*, pt. 4, *syl*, *supra*; *State* v. *Coontz*, 94 W. Va. 59, pt, 5, syl., 117 S. E. 701; *State* v. *McKown*, 116 W. Va. 253, 255,

180 S. E. 93; *State* v. *Fisher,* 126 W. Va. 117, pt. 5, syl., 27 S. E. 2d 581. In the *Fisher* case this Court held in point 5 of the syllabus: "Where in a criminal proceeding there is no error other than in the entry of the judgment imposing sentence, the judgment should be reversed and the case remanded for proper judgment of sentence to be entered by the trial court."

Perceiving no error other than the incorrect judgment of sentence, we reverse the judgment of the trial court, and remand the case for the entry of a proper judgment of sentence.

> *Judgment reversed; case remanded for entry of proper judgment of sentence.*

Lovins, Judge, concurring:

I concur in the result, but I do not agree that the case of *Nuttallburg Smokeless Fuel Co.* v. *First National Bank of Harrisville,* 89 W. Va. 438, 109 S. E. 766, is authority for any point decided in this case. In the *Nuttallburg* case the Court was dealing with the verity rule as applied to an officer's return of service of process and did not in any way discuss or consider the verity of entries made in the law and chancery books of a trial court.

The *Nuttallburg* case creates a very narrow exception to the rule relative to the verity of an officers return of service, as will be seen from the first point of the syllabus: "Upon a proceeding to vacate a judgment taken by default in a case in which the defendant had no notice of the pendency of the action in any manner or form, the return of the officer indorsed upon the summons is only *prima facie* evidence of service and may be overthrown by proof of such lack of notice." Moreover, in the body of the opinion in the *Nuttallburg* case, the following statement is made which, to my mind, confines the application thereof to very narrow limits: "We have attempted in this opinion to draw a distinction in cases of judgment by

default upon no notice either actual, presumptive, or constructive; and where there has been notice and a technicality is relied upon, or where the defendant has appeared, and denies service, but has opportunity to defend. In the latter instance we would deny the right to question the return."

In law when a defendant has appeared the writ of summons *is not a part of the record,* but may be made so by craving oyer of the writ. *Lambert* v. *Ensign Manuf'g. Co.,* 42 W. Va. 813, 26 S. E. 431; *State* v. *Jarrell,* 76 W. Va. 263, 267, 85 S. E. 525; *Pancake* v. *Hite,* 105 W. Va. 366, 368, 142 S. E. 523. In the case of *Wilson* v. *Ritz,* 96 W. Va. 397, 400, 123 S. E. 63, this Court used the following language: "In default judgments or decrees, the process, including the return, becomes a part of the record; but not so, except in cases of default. *New Eagle Gas Coal Company* v. *Burgess,* 90 W. Va. 541, 111 S. E. 508."

It is thus readily seen that the *Nuttallburg* case is wholly inapplicable to the question here. In the *Nuttallburg* case the Court discussed and applied a principle relating to the return of service of a writ of summons which may or may not be a part of the record, and anything said in that case does not support the fifth point of the syllabus in the instant case. Here the question involves an alleged conflict between a record entry reciting that a felony indictment had been returned by the grand jury, and the indictment itself.

Furthermore, I see no occasion for overruling the case of *State* v. *Whitt,* 39 W. Va. 468, 19 S. E. 873, as that case, as I view it, is readily distinguishable from the instant case. In the *Whitt* case defendant was indicted under a statute reading, in part, as follows: "If any person maliciously * * *, maim, kill, or cause the death of any horse, cattle, or other beast, of another person, of the value of twenty dollars or more, he shall be confined in the penitentiary not less than one nor more than five years; and if of less value than twenty dollars, he shall be confined in jail not more than three months, and fined not more than

fifty dollars, in the discretion of the Court. * * *." Chapter 148, Section 25, Acts of the Legislature, Adjourned Session, 1882. The indictment charged that Whitt "* * * did maliciously kill one certain beast, to wit: one steer, of the value of twenty-five dollars, the property of one Vincent Dailey, * * *." The indictment charged sufficient facts to constitute a felony under the statute but failed to incorporate in the indictment that the act of killing the steer was done "feloniously." For that reason the indictment was held to be bad as a charge of felony. It is to be noted that the Court held that the indictment was good for a misdemeanor, but I am doubtful of the correctness of that statement. Even a casual reading of the statute discloses that there were two grades of crime denounced thereby, one being a felony and the other a misdemeanor. The allegations of the indictment charged the higher offense of felony, and since the grade of the crime turned on the value of the beast which was killed, and the value of the beast allegedly killed by Whitt was twenty-five dollars, it is reasonable to say that no misdemeanor was charged. Therefore, the *Whitt* case could certainly be supported upon the theory that the charge in the indictment, not being good as a felony and being uncertain as to a misdemeanor, should be overcome by the statement in the record denominating the indictment as being one for a felony.

In the instant case the record recites that defendant was indicted for a felony, but, on referring to the indictment, which is also as much a part of the record as the recital, it is clear that each of the counts in the indictment plainly charges a misdemeanor. There may be a conflict between the recital in the record and the charge in an indictment, but upon reason and authority, the indictment should be given credence rather than recitals in the record. Therefore, I would consider the error in the recital as one of inadvertence, the correction therefor being also found in the record, to-wit: the indictment, which is the subject of the recital.

676

Convinced that the *Nuttallburg* case is erroneously cited in the majority opinion as authority for a proposition for which it does not stand, and that the *Whitt* case should not be overruled, it being distinguishable from the instant case, I do not agree with the majority opinion in those respects. Hence this criticism. Otherwise I concur.

I am authorized to say that Judge Kenna joins in this concurrence.