82 S.E.2d 913 (1954)
STATE
v.
ABDELLA.
No. 10539.
Supreme Court of Appeals of West Virginia.
Submitted February 2, 1954.
Decided March 9, 1954.
Dissenting Opinion July 27, 1954.
*915 E. B. Pennybacker, Walter T. Crofton, Parkersburg, M. E. Boiarsky, Charleston, for plaintiff in error.
John G. Fox, Atty. Gen., James C. Blanton, Spec. Asst. Atty. Gen., for defendant in error.
*914 RILEY, Judge.
In this criminal proceeding the defendant, Betrus M. Abdella, was indicted and convicted under West Virginia Code, Chapter 61, Article 10, Section 11, for unlawfully, feloniously, and knowingly using and permitting to be used the Ambassador Billiard Room, located at No. 615 Avery Street, Parkersburg, Wood County, for "policy" and "numbers" playing, and for writing "numbers"; and delivering and receiving money and playing "policy" and "numbers", and aiding in the playing thereof, and delivering and receiving money for "numbers", and for having in his possession "numbers", and was sentenced to confinement in the Wood County Jail for a period of six months, fined one thousand dollars, and ordered to pay the costs. To the judgment of sentence this writ of error is prosecuted.
The defendant filed his verified plea, asserting that under Code, Chapter 57, Article 5, Section 2, the State "ought not further to prosecute said indictment against him:" (1) Because of "his immunity from prosecution" for the offense charged in said indictment, and praying that he be dismissed and discharged; (2) because on April 26, 1951, the Circuit Court of Wood County had entered an order requiring defendant to testify before the Grand Jury, then in session, which provided that the defendant "shall have complete legal immunity in regard thereto as the law provides"; and (3) because the defendant "did so appear and testify and give evidence before the Grand Jury in regard to the offense charged against him."
An answer filed on behalf of the State denies that the defendant did "at any time testify and give evidence before the Grand Jury in regard to the offense charged against him in said indictment", and asserts that defendant "has not acquired any immunity from prosecution"; and that the *916 "abstract of the transcript of the evidence adduced before the Grand Jury was filed by the State and made a part of the record by court order entered on May 24, 1951."
The trial court, over defendant's objections and exceptions, sustained the State's motion that the issue raised by the special plea and answer thereto be tried by the court in lieu of a jury, and found and adjudged that: (1) The "abstract of the transcript of the testimony" of defendant is a true, correct, and complete transcript of all the testimony given by the defendant before the grand jury; (2) no issue of fact is raised upon such plea, which would require the determination of a jury, but that the issue is one of law to be determined by the court; and (3) defendant's testimony before the grand jury is not self-incriminating, and the offense charged in the indictment "does not charge the defendant with or furnish the basis for a prosecution for any offense in regard to which defendant was compelled to testify to furnish evidence before the Grand Jury." Upon these findings the circuit court, over defendant's objections and exceptions, overruled the defendant's plea of immunity.
The defendant then filed "Defendant's Special Plea", asserting again that he is immune from prosecution under Code, 57-5-2, for the offense charged in the indictment; and again prayed judgment of dismissal and discharge "from the said premises". To this plea the State demurred, denying: (1) That the same defense had been presented and ruled upon by the trial court; and (2) that defendant entered "his plea of not guilty * * *, and thereby waived the defense" presented in said plea. The trial court sustained the State's demurrer, and overruled defendant's motion for permission to withdraw his plea of not guilty.
At the conclusion of the State's evidence in chief and the trial court's refusal to direct a verdict in defendant's favor, defendant moved that he be permitted under his plea of not guilty to introduce evidence to the effect that he had been granted immunity, having testified before the grand jury in pursuance of the order of the court to the matters involved in the charge of the indictment, or if the court determines that the matter should be offered in the absence of the jury, the defendant "will be prepared to offer it in that manner". The State resisted this motion, and the court overruled it.
Defendant then entered a plea of not guilty, and demurred to the indictment, and moved to quash the same, which demurrer the court overruled, and a jury trial followed.
At the trial the court, over defendant's objections and exceptions, admitted in evidence the complaint for the search warrant, the search warrant, the officer's returns and amended returns thereon, and the personal property listings of the items delivered to the justice of the peace resulting from the search under the warrant.
The circuit court overruled the defendant's motion that he be permitted to offer evidence in support of one of the grounds assigned in support of his position that the warrant and search thereon were illegal, and that such offer be made either before the jury or before the court in lieu of a jury.
At the conclusion of the State's evidence, defendant moved to exclude the State's evidence and for a directed verdict, which motion the court overruled, and the defendant excepted. At the conclusion of all of the evidence in the case the trial court, over defendant's objections and exceptions, gave State's instructions Nos. 1, 4, as amended, and 5, as well as State's instructions Nos. 2 and 3, to which defendant offered no objection, and refused to give defendant's instructions Nos. 1, 3, 4, 5, 7, 9, 12, 13, 14, 15, 16, and 17.
After the jury had returned its verdict, finding the defendant "guilty as charged in each of the three counts in the within indictment", the defendant moved the court that the verdict be set aside and a new trial awarded, and filed in writing the following grounds: (1) The verdict is contrary *917 to and unsupported by the law and the evidence; (2) the trial court erred in overruling defendant's motion to set aside the verdict and grant a new trial; (3) the trial court erred in overruling defendant's demurrer to the indictment, as wellas defendant's motion to quash the indictment; (4) the trial court erred in overruling defendant's plea, claiming immunity from prosecution, pursuant to Code, 57-5-2, and in failing to enter judgment dismissing and discharging defendant "from the said premises in the indictment specified."
The record discloses that the defendant, a lifelong resident of Parkersburg, Wood County, married and the father of one child, operates the "Ambassador Billiard Room", hereinafter referred to as "Ambassador Billiards", located in a building at 615 Avery Street, in the City of Parkersburg, the front portion of which building is used as a restaurant, operated by J. C. George, behind which and in the middle portion of the same room is a pool room, and another room, located to the rear of and behind the pool room, is used as a game room.
Licenses for the year 1950-51 were issued to the defendant by the City of Parkersburg to sell beer, to operate pool tables, and to operate vending machines.
F. B. Kaltnecker was in charge of the pool room and the beer section from six o'clock in the morning until noon, and sometimes for an extra hour. Generally, defendant went to work about seven or seven-thirty at night, and worked throughout the night. Kaltnecker testified that he was hired principally for the purpose of serving beer and taking care of the pool tables.
On February 21, 1952, the defendant came to his place of business about a quarter of one in the afternoon, and asked Kaltnecker to stay for a cup of coffee. On that date defendant's operation at Ambassador Billiards was raided about one o'clock p. m., following the issuance of a search warrant. Prior to the raid defendant had gone to the men's lavatory, which was located at the rear of the room, from which he could not see "what is going on in the middle room." Defendant was in the lavatory at the time the raid occurred.
According to Robert C. Null, a Justice of the Peace of Parkersburg District, possibly a month before February, 1951, a Mrs. Myrtis Smith came to his office, and told him "something that happened in her family in relation to the losing of some money" by her husband, Emerson Smith, at a "poker joint" or poker game, or a place commonly called the Ambassador Billiards. Null next saw Mrs. Smith the first week in February, when he said she related "something about an investigation that the city of Parkersburg, or a visit to the mayor and to the Chief of Police, something in relation to them about refusing to investigate the case she had previously told me about." Null testified that such was the "sole object" of Mrs. Smith's visit on that occasion. On February 9, Mrs. Smith again appeared at Null's office, and stated that she had an appointment to meet Attorney William L. Jacobs there. Upon Jacobs' arrival, he took from his brief case two written complaints and two search warrants, one set relating to lottery tickets and the other set relating to any gaming paraphernalia that might be found on the premises of Ambassador Billiards. Mrs. Smith, having been sworn, filed both complaints. Null then signed the warrants and placed all papers in a cabinet. Three days later during the noon hour the execution of the search warrants was directed by Null by handing the warrants to one A. E. Rothwell, a constable. Null selected three other men to go with Rothwell, Russell A. Rector, a Constable of Parkersburg District, R. L. Fitch, a Deputy Sheriff, and Earl Barton, a Constable of Lubeck District, Wood County. Jacobs was present and told Fitch and Barton that he would meet them on Avery Street across from the Brunswick Billiards.
The threshold question presented by this record is whether the trial court erred in rejecting defendant's verified plea of May 7, 1951, and "Defendant's Special Plea", filed on December 10, 1951, in which the defendant claimed immunity from prosecution under the instant indictment, pursuant to West Virginia Code, Chapter 57, Article *918 5, Section 2. If defendant's position in this regard is sound, the question is all-controlling, and renders it unnecessary for this Court to consider the other assignments of error asserted by defendant.
On May 3, 1951, the day the grand jury filed the instant indictment against the defendant, the grand jurors advised the Circuit Court of Wood County in their "Report of Grand Jurors" that the grand jury had been sitting in regular session from April 23, 1951, to May 3, 1951, inclusive, "for the purpose of investigating and gathering evidence concerning gambling, illegal sale of whiskey, and other vices being carried on in Wood County." Ex necessitate we must find the solution of this very important question in the proceedings before the grand jury on the occasion on which the defendant was required to testify under the provisions of West Virginia Code, Chapter 57, Article 5, Section 2, viewed in the light of the order of the circuit court entered on April 26, 1951, ordering that the defendant, Betrus M. Abdella, be required to testify before the grand jury.
Section 2 provides: "In any criminal proceeding no person shall be excused from testifying or from producing documentary or other evidence upon the ground that such testimony or evidence may criminate or tend to criminate him, if the court in which he is examined is of the opinion that the ends of justice may be promoted by compelling such testimony or evidence. And if, but for this section, the person would have been excused from so testifying or from producing such evidence, then if the person is so compelled to testify or produce other evidence and if such testimony or evidence is self-criminating, such self-criminating testimony or evidence shall not be used or receivable in evidence against him in any proceeding against him thereafter taking place other than a prosecution for perjury in the giving of such evidence, and the person so compelled to testify or furnish evidence shall not be prosecuted for the offense in regard to which he is so compelled to testify or furnish evidence, and he shall have complete legal immunity in regard thereto."
On April 26, 1951, the circuit court entered an order, which recited that the defendant had been summoned as a witness to give evidence before the grand jury, then in session, and that "the ends of justice will be promoted by compelling the said Betrus M. Abdella, to give evidence which may tend to incriminate him", and, upon the motion of the prosecuting attorney of Wood County, the order provided that: "Betrus M. Abdella be required to testify before said Grand Jury, now in session, and that he shall have complete immunity in regard thereto as the law provides." On the basis of this order and the provisions of Code, 57-5-2, the defendant claims immunity from prosecution under the instant indictment.
In response to the summons theretofore issued at the instance of the Prosecuting Attorney of Wood County, requiring the defendant to appear and testify before the grand jury, and in compliance with the order of the circuit court entered on April 26, 1951, which required that the defendant "Betrus M. Abdella be required to testify before said Grand Jury, now in session," which order, as heretofore suggested, provided that defendant "shall have complete immunity in regard thereto as the law provides.", the defendant appeared before the grand jury, and then and there responded to certain questions directed to him by the prosecuting attorney and by a member of the grand jury.
The questions directed to the defendant by the prosecuting attorney and a member of the grand jury, defendant's responses thereto, as well as the testimony of W. L. Jacobs, attorney for the complaining witness, Mrs. Myrtis L. Smith, who appeared and testified before the grand jury immediately before the defendant appeared and testified as a witness, and the proceedings had before the grand jury on the occasion on which defendant testified, are embraced in this record as "An Extract Transcript of the Evidence Adduced and Proceedings had before the Wood County, West Virginia, Grand Jury, * * * as Reported in Shorthand or stenographic: *919 Characters By Elliott B. Sherwood, Acting Official Reporter of said Court."
Citing Code, 51-7-1, which inter alia, provides for the appointment, oath and attendance at grand jury sessions of a shorthand reporter, by the judge of a circuit, intermediate, criminal or common pleas court, by an order entered of record, which reporter the statute provides "shall be designated the `official reporter' of the court for which he shall be appointed", defendant's counsel assert that the trial court's acceptance, finding and adjudication that the "Extract Transcript" of the "Acting Official Reporter" is a true, correct and complete transcript of all "of the testimony of W. L. Jacobs, and the defendant, Betrus M. Abdella, before the Grand Jury" was unwarranted. In support of this position counsel cite Nuttallburg Smokeless Fuel Co. v. First National Bank of Harrisville, 89 W.Va. 438, 109 S.E. 766; Swartzwelder v. Freeport Coal Co., 131 W.Va. 276, 46 S.E.2d 813; State v. Justice, 130 W.Va. 662, 670, 44 S.E.2d 859. In all deference to counsel, the cases cited have no bearing on the position asserted by counsel. The record does not disclose that the shorthand reporter, who certified the testimony taken before the grand jury, though designated as the "Acting Official Reporter of the Circuit Court of Wood County", was not appointed in compliance with the provisions of Code, 51-7-1, and the trial court accepted, found and adjudicated that the "Extract Transcript" is a true, correct and complete transcript of the testimony of W. L. Jacobs and the defendant given before the grand jury.
Taking a practical view of the question, and bearing in mind that the ends of justice must be served, we consider the "Extract Transcript" as a part of the record before us, though it was held in the case of State v. Justice, supra, [130 W.Va. 662, 44 S.E.2d 860] that "A proceeding before a grand jury is not a trial within the meaning of Code, 61-5-1, which defines perjury and subornation of perjury."
From the extract transcript of the testimony it appears that Mrs. Smith's attorney, William L. Jacobs, testified before the grand jury immediately before the defendant was called to testify, which testimony was to the effect that when his client, Mrs. Smith, went to Ambassador Billiards, the establishment operated by the defendant Abdella, for the purpose of having Abdella make restitution of the money which her husband allegedly lost in the poker game at Ambassador Billiards, "numbers were being written in her presence"; and that numbers is a "felony, gambling is a misdemeanor." Upon the prosecuting attorney stating to the grand jury that the grand jury "is here to investigate all phases of crime and gambling conditions in Wood County", the witness Jacobs testified that, "I have evidence tending to prove that the City administration has been engaged in a protection racket, protecting these underworld characters from raids and prosecution"; and upon being questioned by the prosecuting attorney, the witness answered, "You have four sources of information"; "Four people have been paying off"; and that "The fourth individual is Betrus M. Abdella."
Upon being called before the grand jury as a witness, and having answered affirmatively the question whether he owned Ambassador Billiards, the prosecuting attorney informed Abdella that the "Judge entered an order granting you judicial immunity as to matters concerning which you might testify here", except false swearing. The prosecuting attorney then stated to Abdella that previous testimony given to the grand jury had been to the effect that the defendant had stated to certain people that "You have paid off to the city officials and the people in the proper places of power, money for protection." The witness denied such statement, and the following colloquy then ensued between the prosecuting attorney and the defendant:
"Q. Have you in fact, Mr. Abdella, in the conducting of your business paid money for protection? A. What business?
"Q. The Ambassador Billiards. A. Protection for what?

*920 "Q. Protection to operate, the right to operate your place of business? A. No, sir.

* * *
"Q. And you are here now to state you have never paid any public official any sum of money at any time to run any type of business that you may have been engaged in? A. That is right, I have never paid any official.
"Q. Have you paid anyone else? A. That is right, to operate my business."
During the course of defendant's examination before the grand jury, one of the jurors asked: "Just a minute, Abdella. What we want to know in plain English is if you ever paid any official or any other person any protection money to run," to which the defendant replied, "No, sir."
The prosecuting attorney's questions directed to the defendant bearing on the question whether he had paid any official, or anyone else, for protection, were adroitly worded, so that the answers of the defendant, considered with the questions, would not expressly criminate the defendant, and yet inherent in these questions is the idea that the defendant was being asked by the prosecuting attorney whether he had paid to engage in an activity or a business which was illegal, for well may it be asked why in any circumstances would the defendant pay for protection if he was not operating an illegal business or doing an illegal act; and as the evidence introduced before the grand jury before defendant was called as a witness was directed to the possible payment of money for protection by law violators to public officials for protection from raids and prosecution for gambling generally, and in the conduct of the "numbers" business. In answering the questions directed to him by the prosecuting attorney and the member of the grand jury, defendant under coercion of the statute, Code, 57-5-2, and the order of the trial court entered on May 26, 1951, impliedly testified that though he had not been required to or had paid for "protection", he nevertheless had been engaged in activities at No. 615 Avery Street, in the City of Parkersburg, such as in gambling generally and the conduct of the "numbers" business, which were inherently illegal.
From the Revisers' Note, Code, 57-5-2, it appears that Section 2 was incorporated in the Official Code, 1931, as a modification of Section 18, Chapter 152, Barnes' Code, 1923, and covers similar provisions in Section 90, Chapter 3, Sections 8a(7) and Section 8b(17), Chapter 5; Sections 6, 33, Chapter 32A; Section 15b, Chapter 34; Section 5a(5), Chapter 147, and Section 11, Chapter 148, Barnes' Code, 1923. The reasons which effectuated the modification of the prior statutes by the enactment of Section 2 are stated: (a) The provisions in the statutes embraced in Barnes' Code, 1923, "compelling a witness to give evidence against himself were so numerous and sometimes so indefinite * * * that it was difficult to determine when a witness could be so compelled; (b) The reasons which apply to the specific crimes enumerated in the above mentioned sections apply equally to crimes in general."
It appears from the Revisers' Note that Section 18, Chapter 152, Barnes' Code, the most comprehensive of the statutory provisions existent at the time of the enactment of the Official Code, is unconstitutional. Section 18, Chapter 152, was all-comprehensive. It provided that no person called or examined as a witness for the State in a prosecution for an offense punishable under the provisions of Chapters 32, 147 and 151 of the Code (Barnes' Code) "shall be excused from answering any pertinent and legal question which may be asked him as such witness, upon any ground whatever, if the court in which he is so examined be of the opinion that the ends of justice may be promoted by requiring him to answer such question, and shall require him to do so"; but instead of giving to the witness the absolute and complete immunity as to the evidence which may be testified to which would or tends to criminate the witness in a future prosecution, which is inherent in Code, 57-5-2, Section 18 of Chapter 152 of Barnes' Code simply provided that no person against whom such witness shall so *921 "testify, shall be competent as a witness for the State in any prosecution against the witness for the same offense or matter as to which the witness so testified, or for any like offense committed by such witness before the commencement of the prosecution in which he is examined as such witness. Thus Section 18 was most comprehensive in the requirement that the witness testify, and contained a limited immunity in regard thereto. It was, therefore, unconstitutional. See Counselman v. Hitchcock, 142 U.S. 547, 12 S.Ct. 195, 35 L.Ed. 1110; Cullen v. Commonwealth, 24 Grat.Va. 624.
From the Revisors' Note it appears that in the enactment of Section 2, the Canadian statute set out in 4 Wigmore on Evidence, 2d ed., page 935, was taken as a model; and it is stated: "This section, in addition to extending our statutory provisions to all crimes, grants complete immunity in regard to compelled self-criminating evidence and is therefore constitutional."
The purpose which the Legislature entertained in enacting Code, 57-5-2, the circumstances in which and the extent to which the statute grants immunity to a witness, who, under the provisions thereof, is compelled to testify in a criminal proceeding, are set forth by Judge McGinnis on pages 363 and 364 in the opinion in the case of State v. Sterne, 96 W.Va. 360, 361, 123 S.E. 235, 236, in comprehensive language: "The object of the Legislature in passing this section was to strike at the root of the evil. When the prosecuting attorney, after using every effort in his power to root out the evil, fails to find any evidence, or insufficient evidence, by which offenders may be indicted and convicted, he calls upon a witness whom he has reason to believe has violated some one or all of the provisions of the act to testify, said witness appears, and if he gives fully, freely, and truthfully testimony tending in any way to incriminate himself, this section gives him immunity from any violation of the act about which he gives such testimony. It was doubtless well known to the Legislature at the time this section was passed that in some counties of the state, at least, it was difficult to obtain evidence against the violators of this act, although from even casual observation the act was being flagrantly violated, and, knowing these facts, the Legislature passed this section in order to assist the prosecuting attorney in obtaining evidence against the violators of the act. No one is protected under this section, except the witness who is called on behalf of the state to testify, and he must give freely and truthfully some testimony that tends in some way to incriminate himself in connection with the offense with which he is charged, and if he files a plea substantially setting up these facts he has the right to have the allegations of his plea passed upon by a jury."
In point 3 of the syllabus of State v. Sine, 91 W.Va. 608, 114 S.E. 150, this Court held that the defendant in a criminal proceeding who claims immunity under the provisions of (Code, 57-5-2), Barnes' Code, Section 33, Chapter 32A may by special plea in bar to an indictment against him for the offense set up, rely upon the statute, and "* * * in case the facts alleged in said special plea make a good defense, and an issue is made thereon by the state, the same should be tried by a jury." See also State v. Crites, 96 W.Va. 357, 132 S.E. 236.
Section 2 of the statute is plain and clear in its terms, and therefore is not subject to judicial interpretation. In the law of statutory construction, it is axiomatic that where the language of a statute is clear and unambiguous and the intent of the Legislature is evident from the very terms thereof, the statute should not be interpreted but applied in a manner consonant with the legislative purpose for which it was enacted. In City of Charleston v. Charleston Brewing Co., 61 W.Va. 34, pt. 2 syl., 56 S.E. 198, this Court held: "The limits of the application of a statute are generally held to be coextensive with the evil or purpose it was intended to suppress or effectuate, and neither stop short of, nor go beyond, the purpose which the Legislature had in view." See generally Douglass v. Koontz, 137 W.Va. 345, 71 S.E.2d 319; State v. Epperly, 135 W.Va. 877, 65 S.E.2d 488; Hereford v. Meek, 132 W.Va. *922 373, 52 S.E.2d 740; Raynes v. Nitro Pencil Co., 132 W.Va. 417, 52 S.E.2d 248; State ex rel. McLaughlin v. Morris, 128 W.Va. 456, 37 S.E.2d 85; State v. Patachas, 96 W.Va. 203, 122 S.E. 545; Kelleher v. French, D.C., 22 F.2d 341, affirmed 278 U.S. 563, 49 S.Ct. 35, 73 L.Ed. 507.
As heretofore suggested, Code, 57-5-2, as shown by the Revisers' Note thereto, was enacted for the purposes of: (1) "to authorize the granting of immunity in all crimes without exceptions, by a single statutory section"; and (2) to come within the holding of the Supreme Court of the United States in Counselman v. Hitchcock, 142 U.S. 547, 12 S.Ct. 195, 35 L.Ed. 1110, which case the Revisers' Note suggests renders unconstitutional Section 18 of Chapter 152, Barnes', 1923, Code, which was then the most comprehensive statutory provision in this State on the requirement that a witness may be compelled to testify or produce evidence which is self-criminating. A careful consideration of the provisions of Code, 57-5-2, viewed in the light of the prior statutory law of this State, in requiring a witness to testify as to self-criminating matters, and the holding of the Supreme Court of the United States in the Counselman case, convinces the Court that Code, 57-5-2, evidences a legislative intent to grant, to use the language contained in the Revisers' Note to Section 2, "complete immunity in regard to compelled self-criminating evidence".
Under the adroit questioning of defendant before the grand jury by the able Prosecuting Attorney of Wood County by the use of questions which inherently contained the idea that defendant had been engaged in the same illegal activities that were under investigation by the grand jury at the time defendant testified, renders of no moment the fact that defendant answered negatively to the questions propounded to him. Defendant may not, as he testified, have paid for "protection" to anyone; nevertheless veiled in the questions and answers is the underlying thought that defendant was engaged in such activities as may have prompted him to pay for "protection."
Code, 57-5-2, is comprehensive, both in taking away the privilege which a witness has under Article V (Fifth Amendment) of the Constitution of the United States, and Section 5 of Article III of the Constitution of West Virginia, and in clothing an involuntary witness with complete immunity in regard to all compelled self-criminating evidence.
Though the decisions of the Supreme Court of the United States, dealing with the provision of the Fifth Amendment that no person "shall be compelled in any criminal case to be a witness against himself," are not binding on this Court in the interpretation and application of the provisions of the Constitution of this State, the decisions of that Court which deal with the pertinent clause of the Fifth Amendment to the Constitution of the United States are, for the reason that West Virginia Constitution, Article III, Section 5, employs identical language, entitled to the greatest consideration. In the leading case of Counselman v. Hitchcock, supra, [142 U.S. 547, 12 S.Ct. 206] in which the Supreme Court of the United States had under consideration the privilege of a witness under the Fifth Amendment to the Constitution of the United States of refusing to testify in a proceeding before a Federal grand jury, the Court held that Section 860 of the Revised Statutes was unconstitutional, because it "does not supply a complete protection from all the perils against which the constitutional prohibition was designed to guard, and is not a full substitute for that prohibition. * * *". In the opinion the Court said: "In view of the constitutional provision [namely, the pertinent provision of the Fifth Amendment to the Constitution of the United States], a statutory enactment, to be valid, must afford absolute immunity against future prosecution for the offense to which the question relates."
At this point we perhaps cannot do better than to quote the language of Chief Justice *923 Marshall in the trial of Aaron Burr (1 Burr's Trial 254), quoted by the Court in the Counselman case: "* * * It appears to the court to be the true sense of the rule that no witness is compellable to furnish any one of them against himself. It is certainly not only a possible, but a probable, case that a witness, by disclosing a single fact, may complete the testimony against himself, and to every effectual purpose accuse himself as entirely as he would by stating every circumstance which would be required for his conviction. That fact, of itself, might be unavailing, but all other facts without it would be insufficient. While that remains concealed within his own bosom, he is safe; but draw it from thence, and he is exposed to a prosecution. The rule which declares that no man is compellable to accuse himself would most obviously be infringed by compelling a witness to disclose a fact of this description. What testimony may be possessed or is attainable against any individual the court can never know. It would seem, then, that the court ought never to compel a witness `to give an answer which discloses a fact that would form a necessary and essential part of a crime which is punishable by the laws.'"
The Legislature, in our opinion, intended by the enactment of Code, 57-5-2, to give to a witness who is required to testify or produce evidence of a self-criminating nature an immunity from a criminal prosecution which is based in any way upon the self-criminating evidence, an immunity which is coextensive with the privileges which the witness would have under the Fifth Amendment to the Constitution of the United States, and Article III, Section 5, of the Constitution of West Virginia, were it not for the enactment of the statute. Our position in this regard is supported by the great weight of American authority. For an illuminating and exhaustive collation of authorities, see annotation to In re Hearing Before Joint Legislative Committee of House and Senate created by Joint Resolution No. 622, (Ex parte Johnson) 187 S.C. 1, 196 S.E. 164, 118 A.L.R. 591, Anno., 602-629, inclusive.
But the Attorney General argues in the well prepared brief filed on behalf of the State that even if the order and summons of the circuit court, requiring defendant to appear before the grand jury, and the testimony which defendant gave in answer to the questions propounded to him by the Prosecuting Attorney of Wood County would give the defendant immunity from prosecution under the instant indictment, such immunity was waived because the defendant did not assert the privilege of immunity before the grand jury and at the trial by pleading the general issue to the indictment. In support of this position the Attorney General cites State v. Weissengoff, 89 W.Va. 297, 109 S.E. 707; State v. Davidson, 242 Wis. 406, 8 N.W.2d 275, 145 A.L.R. 1411; and United States v. Skinner, D.C., 218 F. 870.
The Weissengoff case is not in point with the case at bar. Defendant in that case was not compelled to appear and testify under the coercive force of Code, 57-5-2, and the process of the court entered pursuant to Section 2. He voluntarily appeared as a witness in his own behalf, and the questions which were propounded to him on cross-examination were answered by the defendant without protest or objection, and then his counsel made a motion to strike the answers. In that case this Court simply held that the right to the constitutional privilege to refuse to answer self-criminating questions in the circumstances shown by the record in the Weissengoff case was "strictly personal, and, if not promptly claimed, it is waived, and so lost." [89 W.Va. 297, 109 S.E. 709.] See also State v. Foley, 128 W.Va. 166, 35 S.E.2d 854. The decision in State v. Davidson, supra, cited in support of the State's position, though that case is practically in point with the case at bar, is contrary to the great weight of authority in the United States, as shown by the Annotation to that case contained in 145 A.L.R. 1416 to 1426, inclusive. The case of United States v. Skinner, supra, also cited by the Attorney General in support of the State's position on the question of waiver, is contrary to the decision of the Supreme Court of the *924 United States in the recent case of United States v. Monia, 317 U.S. 424, 63 S.Ct. 409, 412, 87 L.Ed. 376, and was, in effect, overruled by the decision in the Monia case.
If in the enactment of Code, 57-5-2, the Legislature had intended that the privilege of immunity, which the statute gave to a witness who, under the provisions of the statute and the process of the court, was compelled to testify as to self-criminating matters, to be effective must be asserted by the witness as a personal privilege, the Legislature would have incorporated such a provision in the statute. This it did not do, and this Court will not by judicial fiat incorporate such provision in the statute. In the Monia case the Supreme Court said that "The legislation involved in the instant case [the Sherman Act, Act of February 25, 1903, Chapter 755, 32 Stat. 854, 904, 15 U.S.C.A. § 32] is plain in its terms and, on its face, means to the layman that if he is subpoenaed, and sworn, and testifies, he is to have immunity * * *. That Congress did not intent, or by the statutes in issue provide, that, in addition, the witness must claim his privilege, seems clear. It is not for us to add to the legislation what Congress pretermitted."
Though, as this Court held in Hood v. City of Wheeling, 85 W.Va. 578, 102 S.E. 259, words apparently omitted from a statute may be supplied to effectuate the legislative intent, courts cannot read into a statute that which is not within the intent of the Legislature, manifest from the statute itself. Faulkner v. Town of South Boston, 141 Va. 517, 127 S.E. 380; Jordan v. Town of South Boston, 138 Va. 838, 122 S.E. 265.
Applying the plain provisions of Code, 57-5-2, to this record, and keeping in mind that the legislative purpose, as disclosed by the express provisions of the statute itself, was to aid the prosecuting attorneys in this State in the enforcement of the criminal law, we hold: (1) That Code, 57-5-2, was designed to cure the evil which was inherent in the criminal law of this State prior to the enactment of Section 2, that in a criminal case where the testimony of a known criminal was necessary for the conviction of another, sought to be indicted and convicted, such testimony, unless voluntarily given, was not available to the State under the immunity clauses contained in Article V (Fifth Amendment) of the Constitution of the United States and in Article III, Section 5 of the West Virginia Constitution, that no person in any criminal case "* * * shall be compelled * * * to be a witness against himself, * * *"; (2) Code, 57-5-2, is sufficiently broad in its terms, so that in any criminal proceeding "no person shall be excused from testifying or from producing documentary or other evidence upon the ground that such testimony or evidence may criminate or tend to criminate him," where the trial court is "of the opinion", that is in the exercise of the court's sound discretion, the court determines "that the ends of justice may be promoted by compelling such testimony or evidence"; (3) as a corollary to our holding under subparagraph (2), a person compelled to testify or produce evidence, as required by Code, 57-5-2, is entitled to immunity, which in every respect is coextensive with the privilege conferred upon the witness by Article V of the Constitution of the United States and by Article III, Section 5 of the Constitution of West Virginia, which was supplanted by the coercive effect of the pertinent statute, which in the instant case is Code, 57-5-2, and the order and process of the trial court requiring defendant to appear and testify before the grand jury; (4) that because the idea or hypothesis that the defendant had been guilty of illegal activities in regard to the matters under investigation by the grand jury, namely, gambling and the conduct of the "numbers business", as disclosed by the testimony of William L. Jacobs and the statements of the prosecuting attorney, was inherent in the questions directed to defendant by the prosecuting attorney and the member of the grand jury, the defendant was inferentially at least required to give criminating evidence as to the violations of law for which he was indicted, and having asserted the defense of immunity by the pleas, as he was required to do under the holdings of this Court in State v. Sterne, supra, and State v. Crites, supra, the trial *925 court erred in sustaining the State's demurrers to defendant's verified plea of May 7, 1951, and "Defendant's Special Plea" of December 10, 1951; and (5) because the immunity conferred upon a witness compelled to testify under the provisions of Code, 57-5-2, is absolute and unconditional, the position taken by the attorney general in support of the demurrers to the pleas, that the defendant by filing the plea of not guilty to the indictment, and failing in the first instance before the grand jury to assert the privilege conferred on him by Article V of the Constitution of the United States, and Article III, Section 5, of the West Virginia Constitution, waived the immunity provided by Code, 57-5-2, is unsound.
The foregoing renders moot the other questions raised by counsel on this writ of error.
We therefore reverse the judgment of the Circuit Court of Wood County, set aside the verdict, and remand this case to the circuit court with directions that the order sustaining the State's demurrers to defendant's special pleas of immunity be set aside, that the demurrers to defendant's pleas of immunity be overruled, and that, unless on further proceedings had in the circuit court a question of fact arises upon said pleas, the circuit court enter an order dismissing the indictment with prejudice against further prosecution of the defendant for the offenses charged in the indictment, and that defendant be discharged.
Judgment reversed; verdict set aside; case remanded with directions.
HAYMOND, Judge (dissenting).
I agree, as the majority holds in the decision of this case, that the provisions of Section 2, Article 5, Chapter 57, Code, 1931, provide complete and absolute immunity from prosecution to a person who, by that statute, is compelled to give evidence which may criminate him or which tends to criminate him with respect to any offense other than a prosecution for perjury in the giving of such evidence; and that the immunity afforded by the statute must be coextensive with and as complete as the privilege provided by the Fifth Amendment to the Constitution of the United States and by Article III, Section 5, of the Constitution of West Virginia, that no person, in any criminal case, shall be compelled to be a witness against himself. I do, however, emphatically challenge the view of the majority that the prosecution of the defendant for the offense charged in the indictment in this proceeding is a prosecution for an offense as to which he was compelled to give evidence before the grand jury which returned the instant indictment against him.
As indicated in the majority opinion, the defendant was indicted for unlawfully, feloniously and knowingly using and permitting to be used a certain billiard room operated by him at No. 615 Avery Street, in Parkersburg, Wood County, West Virginia, "for `policy' and `numbers' playing, and for writing `numbers'; and delivering and receiving money and playing `policy' and `numbers', and aiding in the playing thereof, and delivering and receiving money for `numbers', and for having in his possession `numbers'.' He was not indicted for the offense of bribery or attempted bribery of any public official or any other person, or for any offense in connection with the payment of money for "protection" in the operation of his beer or poolroom business, whether such operation was legal or illegal. As the majority opinion points out the investigation conducted by the grand jury which returned the foregoing indictment related to "gambling, illegal sale of whiskey, and other vices being carried on in Wood County." Though special emphasis was laid upon or directed to gambling, the work of the grand jury was manifestly general in character and was devoted to "other vices" and "all phases of crime" which necessarily included crimes of any character. In short the work of the grand jury was devoted to the investigation of crime in general in Wood County and was not limited or confined to gambling offenses or offenses involving the illegal sale of whiskey.
The evidence of the defendant before the grand jury, as disclosed by the "Transcript" which is recognized by the majority *926 as "a true, correct and complete transcript of the testimony" of the defendant and Attorney Jacobs, consisted of negative replies by the defendant to questions which in effect accused him of paying for protection against violations of law in the operation of his business; and the majority opinion quotes the statements of the defendant to the grand jury which form the basis of his claim of immunity from prosecution under the instant indictment. Examination of these statements shows beyond question that they do not refer to any offense involving numbers or gambling in any form. They relate solely to the payment of money for protection for the defendant in the operation of his beer and poolroom business. The questions propounded to him and his answers to them were general in character and they contained no reference whatsoever to gambling. The subject about which he was examined and concerning which he testified was equivocal and ambiguous. The only reasonable inference from his evidence is that he understood that the questions propounded to him insinuated that he had paid someone for protection against some kind of criminal conduct in connection with his beer and poolroom business; but the particular type of criminal conduct is not mentioned in any question propounded to him and is not specified or described anywhere in his evidence. The majority reaches the unwarranted conclusion, which is not supported by any statement of the defendant, that the protection about which he was questioned, and which he denied he had paid for or obtained, related to gambling in some form in connection with his business. That conclusion is based on mere speculation and conjecture.
From any statements of the defendant, which do not mention gambling or numbers, it is just as reasonable to conclude that the protection about which he was questioned related to protection against the sale of whiskey, the operation of his poolroom or his beer business without a license, the sale of beer to intoxicated persons or to persons under the age of eighteen years or during forbidden hours, or to larceny, embezzlement, or any other crime, as it is to conclude that it related to gambling or the use or the sale of numbers.
In its labored effort to justify its conclusion that the evidence of the defendant, by necessary implication, related to protection against gambling at his place of business, the majority, in its opinion, refers to the testimony of William L. Jacobs, the attorney for Mrs. Myrtis Smith whose husband lost money in a game of poker allegedly conducted at the establishment of the defendant. Shortly before the defendant testified, this witness told the grand jury that, when Mrs. Smith went to the place of business of the defendant to obtain from him a refund of the money lost by her husband, "numbers were being written in her presence." The foregoing conclusion is wholly unwarranted and is completely refuted by the testimony of the defendant which is quoted in the majority opinion and which, as reference to the quotation conclusively shows, contains not even a single word about gambling in any form. The testimony given by Jacobs is of no importance or relevancy to the testimony of the defendant or the question of his immunity from prosecution for the offense charged in the indictment. It does not appear, from anything disclosed by the record, that the defendant, when he testified, knew what Jacobs had told the grand jury; but even if the defendant knew every fact related by Jacobs, the testimony given by Jacobs was his own testimony, and the testimony of Jacobs can not, by any stretch of imagination, be considered as, or substituted for, the testimony of the defendant. The plain and incontrovertible fact is that the defendant did not testify about any offense involving gambling, or the use or the permission of numbers, by him at any time or place, directly or by implication, and that the only testimony which he was compelled to give, and did give, consisted of his denial that he had paid for protection in connection with the operation of his business. The only offense to which his testimony related was the crime of bribery in paying for protection against acts performed by him in connection with his business. He did not describe any such *927 acts or in any way mention or disclose their character; and the nature of the acts, relating to the protection about which he was interrogated, not having been disclosed or described by the defendant or by the prosecuting attorney or the juror who questioned him, is not revealed or made known by any statement of the defendant and, when viewed or considered by any utterance of the defendant, is and still remains a mystery which can not be solved by judicial speculation or conjecture. I assume that it will not be seriously asserted that if the defendant had committed murder, rape, larceny, embezzlement, or felonious assault, upon the premises used by him in the operation of his beer and poolroom business, he would be accorded immunity from prosecution for any of those offenses by virtue of his testimony before the grand jury. It is just as logical, however, to extend immunity against prosecution for any of the above designated supposed offenses as it is to extend such immunity, as does the majority, to the defendant from prosecution for the offense charged in the indictment which was not even mentioned or referred to in his testimony.
Of course the defendant could have been asked and required to answer whether he had paid for protection against gambling or the sale or the use of numbers at his place of business or in connection with its operation. Why he was not so interrogated is also a mystery, for he was compelled to appear, and did appear, before the grand jury for that express purpose. But strange as it may seem, no question put to him mentioned or referred to gambling or the sale or the use of numbers, and no answer of the defendant mentioned or referred to either subject as his quoted testimony shows beyond any shadow of doubt. If he had admitted or denied that he had engaged in gambling or the sale or the use of numbers, he would have been clearly entitled, under the statute, to immunity from prosecution for the offense charged in the present indictment, or any indictment for any of those offenses. As he gave no such testimony, however, he is not entitled to immunity from prosecution for the offense charged in the instant indictment and I dissent from the holding of the majority which grants him such immunity.
As the defendant did not give compulsory testimony against himself within the meaning of Section 2, Article 5, Chapter 57, Code, 1931, and, for that reason, is not entitled to immunity from prosecution for the offense charged in the indictment; as he had a fair trial which was free from prejudicial error; and as the evidence establishes his guilt beyond reasonable doubt of the offense of which he was convicted, I would affirm the judgment of the Circuit Court of Wood County.